**FRIENDSHIP VILLA—CLINTON, INC.
d/b/a Clinton Convalescent Center**

v.

**Charles R. BUCK, Ph.D Secretary,
Maryland State Department of
Health and Mental Hygiene.**

**Civ. No. K–80–1850.**

United States District Court,
D. Maryland.

March 31, 1981.

Joseph E. Casson, Malcolm J. Harkins, III and Joseph L. Bianculli, Washington, D. C., and James R. Eyler, Baltimore, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Maryland, and Stephen J. Sfekas and Henry E. Schwartz, Asst. Attys. Gen. of Maryland, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

In this case, Friendship Villa—Clinton, Inc. (Clinton) challenges, as violative of its rights under the federal and Maryland Constitutions, federal statutes and federal and Maryland regulations, certain federal and state regulations in accordance with which Maryland computes the reimbursable ex-penses of nursing homes under the Medicaid statute, 42 U.S.C. § 1396 *et seq.* Because this Court concludes that plaintiff's claims are barred by the Eleventh Amendment, it need not and does not reach the merits of any of those claims.

## I. FACTS

The parties have stipulated to the material facts. On December 29, 1978, J. Kennedy Sills, the owner of all of the issued and outstanding stock of Pine View Gardens, Inc. (Pine View), a Maryland corporation, agreed to sell all of that stock to Wallace R. Carlson. Carlson was then the sole stockholder of Friendship Villa Equity Corporation, a Colorado corporation. Pine View owned, on December 29, 1978, land, buildings, improvements, furniture and equipment of a nursing and convalescent center in Clinton, Maryland which Pine View was leasing to American Nursing Home and Convalescent Center, Inc. American was licensed by the State of Maryland to operate a 265-bed facility and was a provider of Medicaid services.

After the Department of Health and Mental Hygiene of the State of Maryland (Department), of which defendant Buck is Secretary and which is responsible for administering the Maryland Medicaid program, approved the change in ownership contemplated by the said December 29, 1978 agreement, Carlson acquired, on June 5, 1979, pursuant to that December 29, 1978 agreement, 100 percent of the stock of Pine View and thereafter liquidated Pine View. Carlson then leased the said liquidated assets to plaintiff herein, namely, Clinton, a Maryland corporation and a wholly owned subsidiary of Friendship Villa Equity Corporation. The parties have agreed that Clinton's costs for the purpose of Medicaid reimbursement are determined by the transactions pursuant to which Carlson individually became the owner of the Clinton assets and not by the terms of the subsequent lease between him and Clinton since he and Clinton are "related parties" within the meaning of 42 C.F.R. § 405.427. The

parties have also agreed that the consideration paid by Carlson for the stock of Pine View was the result of an arms length transaction and reflected the fair market value of the assets of Pine View as an ongoing nursing and convalescent home facility. After Carlson leased, as aforesaid, the liquidated assets to Clinton, the latter, as a corporation, received a license to operate the nursing home from the Department and entered into a provider agreement with the Department. Until August of 1979 Clinton was reimbursed by the Department at the rate of $30.70 per patient day for care and services rendered under Medicaid. In August, 1979, a review of projected budgets and operating costs by the Department led it to reduce that reimbursement rate to $25.45 per patient day.[1]

The August, 1979 reduction was caused by the Department's determination not to use, in calculating reimbursable costs, the cost to Carlson of acquiring the Pine View assets, but rather to use the costs of Pine View. In so doing, the Department refused to treat the totality of the transactions as being in essence a sale of assets by Pine View to Clinton. If such a direct sale had occurred, at arms length, then the Department would have looked to the costs so incurred by Clinton. But because there was first a sale of all of Pine View's stock to Carlson, and then a liquidation caused by Carlson, the Department viewed the acquisition by Carlson of Sills' stock as a sale of stock which did not require or permit revaluation of assets, and the subsequent liquidation as a transaction between related parties, Pine View and Carlson, which was required to be disregarded for cost purposes under 42 C.F.R. § 405.427. After Clinton objected to those determinations by the Department, the latter informally reviewed them, but afforded no formal administrative hearing because administrative review of cost determinations by the Department is available to a provider of services only after final cost determinations are made at the end of the fiscal year.[2]

Clinton instituted this case in July, 1980 seeking a preliminary injunction requiring defendant to use the price Carlson paid to Sills as the basis for valuing the assets of the nursing home in computing Medicaid reimbursements, and a declaratory judgment that the Department's current method of calculating Clinton's reimbursable costs is a violation of the Medicaid statute, of applicable federal regulations, and of constitutional and lawful rights of plaintiff.

On September 19, 1980, after this action was filed, Friendship Villa Equity Corporation, Clinton's parent corporation, sold all of its interests in sixteen nursing homes, including the Clinton, Maryland facility in question here, and in so doing cancelled out the rights of its wholly-owned subsidiary, Clinton, the plaintiff herein, to operate the Clinton, Maryland facility. Accordingly, on September 19, 1980, Clinton ceased the operation of the nursing, convalescent facility in Clinton, Maryland. Thus, since September 19, 1980, Clinton seeks herein only what it as plaintiff claims is proper reimbursement for the period between June, 1979 and September, 1980 when it was a Medicaid provider.

## II.  JURISDICTION

Plaintiff alleges jurisdiction under 28 U.S.C. § 1331(a) and § 1343.[3] Defendant contends that jurisdiction over the within action is barred by section 205(h) of the

---

1. In October, 1979, the rate per patient day was increased to $27.67 on the basis of revised operating cost projections. All of the rates were interim rates based on operating cost projections and subject to adjustment at the end of the fiscal year to reflect the actual operating costs.

2. See Code of Md.Ad.Reg. 10.09.11.07.B and C, and 10.09.11.09.

3. Jurisdiction over Clinton's claims under the federal Constitution is alleged under section 1343(3). Pendent jurisdiction is claimed over plaintiff's state law claims. Because this Court concludes infra that it has jurisdiction under

Social Security Act, 42 U.S.C. § 405(h),[4] which provides:

The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title.

That provision is found in Title II of the Social Security Act. However, it has been incorporated into Title XVIII of the Social Security Act, the Medicare chapter, by § 1872 of the Act, 42 U.S.C. § 1395ii. Defendant argues that provision is applicable to this Medicaid case (under Title XIX) because the regulations which Clinton challenges were promulgated under Medicare (Title XVIII) and then adopted and made applicable to Medicaid. In effect defendant contends that this case, while brought under Title XIX, is in reality a challenge to Medicare regulations, and so should be governed by the jurisdictional limitations applicable to Medicare.

This action would have been barred by 42 U.S.C. § 405(h) had it been brought under the Medicare statute. *Rhode Island Hospital Inc. v. Califano*, 585 F.2d 1153, 1156 (1st Cir. 1978); *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283, 287–89 (8th Cir.), *cert. denied*, 429 U.S. 577, 97 S.Ct.

484, 50 L.Ed.2d 584 (1976). *See Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 2463, 45 L.Ed.2d 522 (1975) (Title II).

In *Rhode Island Hospital, supra*, the plaintiff had challenged the regulations in issue under both Medicare and Medicaid. Chief Judge Coffin, in that case, in the course of considering the applicability of section 405(h) to cases attacking Medicare regulations under Medicaid, wrote at 1161–63 (footnote omitted):

We agree * * * that § 405(h) presents no jurisdictional bar in cases arising under Title XIX. *See Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 949 (5th Cir. 1977).

\* \* \* \* \* \*

Were we to assume § 1331 jurisdiction over the Hospital's Medicaid claim we would find ourselves in the peculiar posture of hearing a case that consists entirely of a challenge to the limits promulgated under Title XVIII, when we are expressly barred by Title XVIII from entertaining that challenge at this time. To so allow Title XIX to become the back door into Title XVIII, which has barred this case from entrance, would result in an automatic circumvention of the Title XVIII administrative machinery when its cost limitations have been adopted by Title XIX and the provider, as will usually be the case, furnishes services under both Titles.

\* \* \* \* \* \*

It is to be noted that all parts of section 24 are eliminated from that 1976 codification other than sections 1331 and 1346. That elimination is seemingly an inadvertent codification error, since section 24 of the Judicial Code, as it stood when the present section 205 of the Social Security Act was adopted, 53 Stat. 1360 (1939), included a number of jurisdictional provisions, including not only sections 1331 and 1346, but also section 1343. Since 42 U.S.C. has never been enacted into law, *see* Preface to the United States Code, 1976 Edition, third supplement (January 8, 1980), the provision as enacted would appear in any event to control over the codification.

---

section 1331(a), it need not and does not reach the question of jurisdiction under section 1343.

**4.** Section 205(h) is codified as 42 U.S.C. § 405(h). The most recent codification, in the 1976 edition of the Code, reads as follows:

(h) Finality of Secretary's decision

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

We are not faced with a case like *Springdale* in which the gravamen of the action can be said to arise under the Medicaid Act and resolution requires analysis of a Medicare provision. At issue here is the validity of the Title XVIII reimbursement limits which allegedly deprive a provider of reimbursement for Medicare costs, and as a result of their impact on Title XIX, of a much smaller amount of Medicaid costs as well. By declining to exercise jurisdiction over this case we leave the Hospital to the Title XVIII administrative process. To the extent that its challenge to the Medicare reimbursement limits would be successful there, or in a court after obtaining a "final determination", as required by 42 U.S.C. § 1395oo(f), the benefits of the determination will accrue to it as a provider of Medicaid as well as Medicare services.

In *Hadley Memorial Hospital, Inc. v. Harris*, 1980 CCH Medicare and Medicaid Guide ¶ 30,533 at p. 10,062 (D.Kan.1980), the Court, relying on the *Rhode Island Hospital* case, came to the same conclusion in a situation rather similar to that which was present in *Rhode Island Hospital.*

In *Rhode Island Hospital*, Judge Coffin stressed that plaintiff therein had an alternate route for review since, as a provider of both Medicare and Medicaid services, plaintiff was suing the federal government claiming improper reimbursement under both programs. Since plaintiff had available to it an administrative remedy through which to test the regulations under Medicare, the Court would not permit plaintiff's Medicaid claim to be stated under section 1331 so as to bypass those Medicare review procedures. In the within case, by contrast there is no claim under Medicare,[5] and, at least as to the defendant herein, Clinton as plaintiff cannot resort to the Medicare ad-ministrative process. The regulations under attack in both *Rhode Island Hospital* and in *Hadley* were promulgated under Medicare and were specifically incorporated into Medicaid by the Medicaid statute itself. In *Rhode Island Hospital*, it was necessary for plaintiff, in order to invalidate the regulations, to contend that the regulations were inconsistent with the Medicare statute. In the within case, the regulations in question are those governing reimbursement for services by skilled nursing facilities under 42 U.S.C. § 1396a(a)(13)(E), which does not incorporate Medicare regulations. Accordingly in this case it is possible that the regulations are valid as Medicare regulations, yet still inconsistent with the Medicaid Act.[6]

In *Springdale Convalescent Center v. Mathews*, 545 F.2d 943 (5th Cir. 1977), plaintiff was seeking to overturn a decision of the Secretary of HEW terminating its status as a Medicaid provider. The termination had been made pursuant to a Medicaid regulation which permitted termination for failure to return to the Government excess reimbursement under the Medicare program. The key to plaintiff's claim was the contention that it had not received excessive Medicare payments, a claim which required the Court to construe Medicare regulations. Because the action had been taken by defendant under a Medicaid regulation, the Fifth Circuit held (at 949) that section 405(h) did not bar review of the action. Similarly, in the within case, the action arises under Medicaid, even though plaintiff's contention herein also requires construction of Medicare regulations. Accordingly, in this Court's view, section 405(h) does not pose a bar herein.

In *Rhode Island Hospital* and also in *Hadley*, plaintiffs sought relief primarily

---

5. Clinton did provide some services under Medicare. However, those services were small by comparison with the Medicaid services which Clinton provided. Further, Clinton has stated in a document filed in this proceeding that it has no desire to contest reimbursement rates under Medicare. Plaintiff's Reply to Defendant's Motion to Dismiss for Lack of Sub-ject Matter Jurisdiction, pp. 3–5, document No. 7 in court file.

6. That is true even though federal regulations under that section permit the individual states to adopt the Medicare regulations, and Maryland has chosen to do so. 42 C.F.R. § 447.276.

against federal officials.[7] Here, the only defendant is a state official who plays no part in the administration of the Medicare program. The third sentence of section 405(h) refers only to suits against "the United States, the Secretary, or any other officer or employee thereof * * *." Thus, by its own terms, that sentence may well not, in any event, apply to the defendant in this case.

■ In the within case, plaintiff is not suing any federal official, is making no claims under the Medicare statute, and, unlike plaintiffs in *Rhode Island Hospital* and in *Hadley*, is not attacking Medicare regulations specifically incorporated into Medicaid by the Medicaid statute. For those reasons, this Court concludes that section 405(h) does not bar this action and that this Court has jurisdiction under 28 U.S.C. § 1331(a).

## III. THE ELEVENTH AMENDMENT

Plaintiff, as indicated *supra*, is presently seeking additional reimbursement only for Medicaid services provided in the past, between June, 1979 and September, 1980. As such, the question arises as to whether plaintiff's claim is barred by the Eleventh Amendment, which, as is made clear in *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), bars any award "which must be paid from public funds in the state treasury."[8]

The reimbursement payments made thus far by the Department to Clinton are interim payments and are subject to adjustment upon completion of the final accounting, and any administrative process which follows, at the end of the fiscal year. Thus, Maryland's liability to plaintiff has not yet become fixed. Nevertheless, Clinton is claiming reimbursement for services which have already been provided. The fact that the precise amount of the reimbursement

has not yet been determined and the fact that the administrative process provided by Maryland law will entitle plaintiff to an administrative review of the Medicaid cost determinations—all of which reflects that further developments with regard to plaintiff's within claim may well occur in the future—does not alter the further fact that the relief plaintiff seeks herein is payment from state funds by the State of Maryland of more money for services already rendered by plaintiff than plaintiff has received to date. In *Jordan v. Trainor*, 563 F.2d 873 (7th Cir. 1977), *aff'd sub nom. Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) the Supreme Court concluded that determination of liability for past benefits by a federal district court is barred by the Eleventh Amendment even when there is a state administrative process under which claims for such benefits can be made against the state. In *Trainor* the district court, on remand from *Edelman, supra*, ordered that in lieu of monetary relief, notice be given to members of the plaintiff class that benefits had been illegally withheld, and that those class members could claim those benefits though a state administrative process. The Seventh Circuit concluded that that notice, by stating that the withholding was illegal, in essence determined the question of liability and hence was not permitted under the Eleventh Amendment. However the Seventh Circuit, over three dissenting opinions, did approve a neutrally phrased notice which, without prejudging the question of liability, informed class members that a state administrative review process was available to them. What clearly emerges from *Trainor* in any event is the proposition that the Eleventh Amendment forbids federal court determination of liability on the part of a state for past benefits owed by a state even when that state provides a method by

---

7. In *Rhode Island Hospital* there were seemingly no state defendants. See 477 F.Supp. 703 (D.R.I.1978), *aff'd*, 585 F.2d 1153, 1162. In *Hadley* a Kansas official was named as one of the defendants, but plaintiffs included 19 hospital associations representing hospitals all across the United States (*see* 1980 CCH Medi-

care and Medicaid Guide at p. 10,057). Apparently, in *Hadley*, the principal claim was against the federal defendants.

8. There is no contention that any monetary relief herein would not be paid, at least in part, from state funds.

which claims for such payments may be raised in future state proceedings. As Judge Winter put it in *Kimble v. Solomon*, 599 F.2d 599, 603–05 (4th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979):

> In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court made clear that the doctrine of *Ex parte Young* permits suits for prospective relief only, and that the eleventh amendment precludes retrospective relief in the nature of a monetary award against the state, even if the suit is brought against a state officer rather than the state itself. * * *

> The distinction between prospective and retrospective relief was refined in *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). In that case, the district court had ordered the establishment of certain remedial educational programs to counteract the effects of *de jure* segregation in Detroit public schools and had directed that part of the cost of the program be paid by the State of Michigan. Even though the decree directly ordered the expenditure of state funds, the Supreme Court upheld it from eleventh amendment attack. The Court reaffirmed the doctrine of *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714] that "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Id.* at 289, 97 S.Ct. at 2762. The Court explained that the order for payment of state funds was not retrospective, as it was not "a raid on the state treasury for an accrued monetary liability." *Id.* at 290 n.22, 97 S.Ct. at 2762 n.22. * * *

Where, as here, Maryland failed to comply with the notice regulations, it has not instituted a legally effective reduction in its Medicaid benefits. A court of equity not subject to the eleventh amendment could order expansive relief for this violation. This relief would have two components: First, retrospectively, those eligible recipients who had managed to obtain medical services despite the reductions would be paid benefits for such services in accordance with pre-1976 state law. Second, prospectively, those recipients who receive services after the court's order would be paid benefits under pre-1976 law until the state effects a legal reduction of benefits by mailing adequate and timely notice at least ten days before the effective date of the reduction.

We think that the first, retrospective component of this relief would be barred by the eleventh amendment. Although the recipients who have already received medical services are arguably entitled to benefits under pre-1976 law, Maryland's obligation to pay these benefits arose at the time the treatments were received, and the state has denied them. To require the state to make payments for these past medical services would be tantamount to " 'the award of an *accrued* monetary liability . . .' which represent[s] 'retroactive payments.'" *Milliken v. Bradley*, 433 U.S. at 289, 97 S.Ct. at 2761 (quoting *Edelman v. Jordan*, 415 U.S. at 663–64, 94 S.Ct. 1347) (emphasis supplied by the *Milliken* Court). * * *

By contrast, the eleventh amendment offers no impediment to the second, prospective component of relief outlined above. This prospective relief looks to the future and requires payments only for medical services received after entry of the district court's decree. Such relief would hardly constitute "the award of an accrued monetary liability." To the contrary, the state's liability for payments would not be fixed until recipients seek and receive medical services after the district court has entered its order. This is the very form of relief now proposed by plaintiffs, and the district court was incorrect in concluding that such relief was barred by the eleventh amendment.

■ Accordingly, the monetary relief presently sought herein by plaintiff would appear barred by the Eleventh Amendment unless Maryland has waived its immunity in this case. The mere fact that a state has participated in a federally-funded aid pro-

gram, such as Medicaid, does not constitute a waiver of Eleventh Amendment immunity. *Edelman v. Jordan, supra,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662. Indeed, Eleventh Amendment immunity has been held specifically to apply to claims arising out of the Medicaid program. *Kimble v. Solomon, supra.* Furthermore, while at one point the Congress required a waiver of Eleventh Amendment immunity as a condition of participation in Medicaid, P.L. 94–182, § 111(a) (Dec. 31, 1975), the Congress subsequently withdrew that requirement retroactively to its effective date. P.L. 94–552 (Oct. 18, 1976). The legislative history of the latter enactment, namely, P.L. 94–552, reveals that Congress does not intend participation in Medicaid to be a waiver of "immunity to suits for money judgments in federal court * * *." Senate Rep.No. 94–1240, p. 3, reprinted at 1976 U.S.Code Cong. & Ad.News 5648, 5650. *See Id.* at 5649–51.

■ In *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* —— U.S. ——, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), *rev'g Florida Nursing Home Association v. Page,* 616 F.2d 1355 (5th Cir. 1980), the Fifth Circuit had concluded that a provider agreement entered into by the State of Florida with a nursing home contained a waiver of Eleventh Amendment immunity. In that case the contract expressly provided that it would be governed by applicable federal as well as state laws. Judge Ainsworth, writing for the Fifth Circuit, stated that failure to find a waiver could result in immunizing "state officers and the agency from their contractual duty to adhere to federal statutory requirements." 616 F.2d 1355, 1363. Reversing in a *per curiam* opinion, over the dissents of Justices Brennan, Marshall and Blackmun (three of the four dissenters (along with Justice Douglas) in *Edelman*), the majority of the Supreme Court again stressed the *Edelman* requirement that only an express, and not an implied, undertaking constitutes waiver by a state of sovereign immunity. If anything, the factual situation in the within case is stronger for the State than in the Florida case. Herein, the provider agreement does not, as it did in the Florida case, explicitly make federal law applicable.[9] Paragraph II.A of the provider agreement[10] between Clinton and the Department states that the Department agrees:

> To pay the Facility for services provided to Recipients and covered by the Medical Assistance Program in accordance with, and at rates prescribed by, the regulations and guidelines of the Program, or other applicable state law;

\* \* \*

Absent is any explicit reference to federal law. Of course federal law does govern Medicaid, and in fact Maryland has adopted Medicare regulations, the regulations under challenge here, to govern reimbursement rates. Code of Md.Ad.Reg. 10.09.11.07.-B(1).[11] But unlike the situation in the Florida case, the Department has assumed no specific *contractual* obligation to follow federal law. And even that obligation has been held in the Florida case by the Supreme Court not to constitute an Eleventh Amendment waiver. In sum, in this case, the Eleventh Amendment bars any retroactive monetary relief herein.

9. The agreement in this case does, however, provide that it will be modified to bring it into conformity with applicable federal and state laws should those laws or judicial interpretation of them change. *See* ¶¶ III.A and III.B, Exhibit D to Joint Stipulation, document No. 11 in the court file.

10. Exhibit D to Joint Stipulation, document No. 11 in the court file.

11. *See* n.6 *supra.* It is also to be noted that a waiver of immunity cannot be inferred merely from the fact that Maryland provides a state judicial remedy. *Ford Motor Company v. De-partment of Treasury of the State of Indiana,* 323 U.S. 459, 465, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945), *citing* (at n.9) to *Smith v. Reeves,* 178 U.S. 436, 441, 20 S.Ct. 919, 921, 44 L.Ed. 1140 (1900); *Massachusetts Hospital Association, Inc. v. Harris,* 500 F.Supp. 1270 (D.Mass. 1980). In *Massachusetts Hospital Association,* the Court stated (at 1278) that "it is well-settled that in the absence of a clear declaration of consent to suit in federal court, a state's consent to actions in its own courts will not be held to abrogate its Eleventh Amendment immunity."

## IV. INJUNCTIVE AND DECLARATORY RELIEF

██ Plaintiff seeks to avoid the Eleventh Amendment bar by stating its quest for relief in terms of injunctive and/or declaratory relief. However, to the extent that equitable relief is retrospective, it is barred by the Eleventh Amendment just as is retrospective monetary relief. "[P]ayment of state funds, not as a necessary consequence of *compliance in the future* with a substantive federal-question determination, but as a form of compensation" to claimants for past services rendered, is barred by the Eleventh Amendment. *Edelman v. Jordan, supra,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (emphasis supplied). *See also Kimble v. Solomon, supra;*[12] *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 309–10 (8th Cir. 1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979); *Barron v. Bellairs,* 496 F.2d 1187 (5th Cir. 1974); *Massachusetts Hospital Association, Inc. v. Harris,* 500 F.Supp. 1270 (D.Mass.1980). In *Massachusetts Hospital Association* plaintiff sought an injunction requiring the federal defendants to withhold Medicaid payments to the state, and requiring the state defendants to maintain Medicaid services at the same level, unless the hospital were paid the past reimbursements due them within 90 days. The Court held that this relief was barred by the Eleventh Amendment, stating (at 1279):

> Edelman and its progeny clearly prevent the federal courts from achieving through the artful use of injunctive relief the identical result obtained by a retroactive award of money damages. * * *

Prospective injunctive and declaratory relief is not barred by the Eleventh Amendment. However, in the within case that part of the total relief originally sought in this case by Clinton which was prospective in nature became moot when plaintiff ceased to provide reimbursable services under the Medicaid program. Nor is this a case which falls within an exception to the mootness doctrine. It is not a case in which the defendant has voluntarily ceased the activity complained of. Rather, in this case defendant had not altered his policies at all. Instead, plaintiff, not defendant, has ceased relevant activity, *i. e.,* herein plaintiff has ceased to be a Medicaid provider. Nor is this a case in which the alleged violation of plaintiff's rights is capable of repetition yet evading review. *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Here only the presumably unusual fact that plaintiff left the nursing home business during the pendency of the suit has prevented review. While the legal question of whether the defendant herein is violating the rights of Medicaid providers by his conduct alleged herein to be unlawful is one which is likely to arise again, there is no indication that when that occurs the defendant will either desire to evade court determination of that issue or will be able so to do.

██ As to plaintiff's quest for a declaratory judgment, a federal court may not grant declaratory relief unless "there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), *quoting from Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *See also Brooks v. Cousins,* 527 F.2d 472 (4th Cir. 1975); *Williams v. Johnson,* 386 F.Supp. 280, 286 (D.Md. 1974). In the within case, now that plaintiff is no longer a Medicaid provider, there is no such ongoing controversy.[13]

---

**12.** *See* quotations from *Kimble supra* at p. 726.

**13.** Plaintiff, of course, has strong practical reasons to seek injunctive and/or declaratory relief herein and to obtain this Court's views as to plaintiff's entitlement to the additional monetary reimbursement plaintiff seeks. The Department might choose to follow retrospectively such expression of views, even though under the Eleventh Amendment this Court lacks the power to compel compliance. There are cases in which courts, in issuing declaratory judgments, suggest that difficult Eleventh Amend-

Thus all relief sought by the plaintiff herein is barred, monetary relief and retrospective injunctive or declaratory relief by the Eleventh Amendment, prospective relief by mootness. Accordingly, defendant's motion to dismiss will be granted. That disposition does not leave plaintiff without a forum in which to pursue plaintiff's claims for full payment by the State of Maryland for services already provided by plaintiff. Maryland does provide for administrative and judicial review of final cost determinations. Accordingly, plaintiff may pursue its claims as to the validity of the regulations it challenges in those state forums.

ment problems may sometimes be avoided if the state voluntarily chooses to apply the judgments retroactively. *See, e. g., Doe v. Gillman,* 479 F.2d 646, 649 (8th Cir. 1973), *cert. denied,* 417 U.S. 947, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974) and 421 U.S. 920 (1975); *Massachusetts General Hospital v. Sargent,* 397 F.Supp. 1056, 1073 (D.Mass.1975); *Catholic Medical Center v. Rockefeller,* 305 F.Supp. 1268, 1271 (E.D.N. Y.1969) (Judd, J.), *aff'd per curiam* 430 F.2d 1297 (2d Cir. 1970). However, in each of those cases there seemingly were ongoing controversies as to anticipated future operations of the respective plaintiffs, which is not the case herein.