**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Medical Society of the State of New York, Sidney Finkel, and John A. Bleski, Plaintiffs,**

**and**

Benedictine Hospital, Beth Israel Medical Center, Brookhaven Memorial Hospital Center, Buffalo General Hospital, Canton–Potsdam Hospital, Champlain Valley Physicians Hospital Medical Center, Clifton Springs Hospital & Clinic, Community–General Hospital of Greater Syracuse, De Graff Memorial Hospital, Episcopal Health Services, Inc., Aurelia Osborn Fox Memorial Hospital Society, The Genesee Hospital, Glens Falls Hospital, A. Barton Hepburn Hospital, Highland Hospital of Rochester, Kingsbrook Jewish Medical Center, The Long Island College Hospital, Long Island Jewish Medical Center, Maimonides Medical Center, Nassau County Medical Center, New York Eye & Ear Infirmary, Northern Westchester Hospital Center, Oswego Hospital, Our Lady of Victory

354

Hospital, Park Ridge Hospital, St. Barnabas Hospital, St. Clare's Hospital of Schenectady, St. Joseph's Hospital Health Center (Syracuse), St. Mary's Hospital (Rochester), St. Peter's Hospital, St. Vincent's Medical Center of Richmond, Sisters of Charity Hospital, Strong Memorial Hospital, Union Hospital of The Bronx, and White Plains Hospital Center, Plaintiffs–Hospital Intervenors,

and

Midwood Ambulance & Oxygen Service, Inc., Hunter Ambulance, Inc., Approved Ambulance & Oxygen Service, Inc., Mercy Medical Transportation, Inc., TWC Ambulance Service, Inc., Empress Ambulance Service, Inc., Richmond County Ambulance Service, Inc., Citywide Ambulance Service, Inc., Weir Ambulance, Inc., Associated Ambulance Service, Inc., Park Ambulance & Oxygen Service, Inc., Bi–County Ambulance Service, Inc., Stat Equipment Corp. d/b/a Stat Ambulance Service, Medibus, Inc., Robinson's Ambulance & Oxygen Service, Inc., Metropolitan Ambulance & First Aid Corp., Metro–North Ambulance Co., AA Ambulance & Oxygen Service, Inc., Admiral Ambulance Service, Inc., National Ambulance & Oxygen Service, Inc., Eastern Ambulance Service, Inc., Peconic Ambulance Service, Inc., Monroe Ambulance, Response Medical Transport and Crest Ambulance, Plaintiffs–Ambulance Intervenors,

v.

Cesar A. PERALES, as Commissioner of Social Services of the State of New York and Louis W. Sullivan, as Secretary of the United States Department of Health and Human Services, Defendants.

No. 87 Civ. 4896 (MJL).

United States District Court,
S.D. New York.

Sept. 23, 1993.

355

Rosenman & Colin by Peter F. Nadel, David A. Florman, Allison Sher, New York City, for plaintiff NY City Health and Hospitals Corp. and intervenors.

LeBoeuf, Lamb, Leiby & MacRae by Jay G. Safer, New York City, for plaintiffs Medical Soc. of State of NY, Sidney Finkel, John A. Bleski and plaintiffs–ambulance intervenors.

Robert Abrams, Atty. Gen., State of NY, New York City, for defendant Perales.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is the motion for contempt filed August 28, 1992 by plaintiffs New York City Health and Hospitals Corporation ("HHC"), Sidney Finkel, and John A. Bleski, seeking to hold the defendant Commissioner of Social Services of the State of New York (the "Commissioner") in civil contempt for failure to comply with the June 3, 1992 Order of this Court. Also before the Court are motions by plaintiffs-hospital intervenors (the "Hospital Intervenors") and plaintiffs-ambulance intervenors (the "Ambulance Intervenors") (collectively, the "intervenors") filed August 28, 1992 and October 30, 1992, respectively, to join the motion for contempt. For the reasons stated below, the motions to intervene are granted. The motion for contempt is granted with respect to those claims that had not expired under the regulatory 90 day limitation period before this Court's June 3, 1992 Order, and is denied in all other respects.

## BACKGROUND

### A. Case History

HHC is a New York public benefit corporation created by New York State to operate the City's municipal hospitals. The Hospital Intervenors are hospitals located in New York, and the Ambulance Intervenors are privately owned and operated companies that provide ambulance services in New York. All of the plaintiffs and intervenors provide services for dually eligible and other qualified beneficiaries under the Medicare and Medicaid Acts.

Medicare is a medical insurance program administered by the federal government for persons age 65 or older, and consists of two parts. Medicare Part A pays 100% of reasonable inpatient costs. Medicare Part B pays 80% of other reasonable costs not covered by Part A, including physician and outpatient services. The remaining 20% under Part B is "coinsurance"—a responsibility of the patient.

Medicaid is a financial assistance program for the poor, jointly administered by the federal government and the States. The States set fee schedules, and health care providers who participate in Medicaid must accept the scheduled fee as payment in full.

Medicare and Medicaid can overlap, because State Medicaid programs may pay

Medicare Part B premiums, deductibles, and coinsurance on behalf of those who are dually eligible (i.e., both elderly and poor). 42 U.S.C. § 1395v. New York is one of the States that has such a "buy-in" program. Before January 1, 1987, New York's Medicaid program paid Medicare Part B premiums, and if medical expenses are incurred, the deductible and personal 20% coinsurance responsibility as well.

New York State altered its practice in 1987. A regulation was effected that limited the State Medicaid program's responsibility for payment of Medicare Part B deductibles and coinsurance. N.Y.Comp.Codes R. & Regs. tit. 18, § 360.7–7.[1] The regulation effectively stated that health care providers who served dually eligible persons under Medicare Part B would be limited to recovery of the scheduled Medicaid fee for the services rendered. "New York [would] not pay any cost-sharing amounts except ... [w]hen the 80% of reasonable costs or charges that Medicare reimburses amounts to less than the Medicaid rate, [in which case] New York [would] pay the difference." *New York City Health & Hosps. Corp. v. Perales*, 954 F.2d 854, 856–57 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992).[2] The regulation also prohibited Medicare providers from recovering from the dually eligible individuals, thus sealing the limitation on providers' reimbursement.

Plaintiffs are health care providers whose ability to recover reasonable charges under Medicare was limited by the regulation. They brought suit on July 10, 1987, claiming that the regulation violated the Medicare Act, 42 U.S.C. §§ 1395–1395ccc, and the Medicaid Act. 42 U.S.C. §§ 1396–1396u. This Court agreed with the defendants' interpretation of the two Acts, and granted their motions for summary judgment and to dis-

miss on March 18, 1991. Judgment was entered, but was then vacated to permit filing of an amended complaint. The amended complaint was dismissed in April 1991.

Plaintiffs appealed, and the Court of Appeals for the Second Circuit reversed. The Second Circuit disagreed with the defendants' interpretation of the Acts, and held that "a Medicare provider need not be satisfied with inadequate payment, i.e., less than reasonable costs or charges, even when that provider is treating a Medicare patient who happens also to be poor." *Perales*, 954 F.2d at 860. The Second Circuit reversed and remanded to this Court for entry of judgment in plaintiffs' favor. This Court entered judgment for plaintiff on June 3, 1992.

### B. Present Controversy

The Commissioner has complied with the judgment only for services rendered after June 3, 1992. He contends that the June 3, 1992 Order cannot be understood as requiring reimbursement for services rendered prior to the judgment, because that would be retroactive relief barred by the Eleventh Amendment to the federal Constitution. Plaintiffs and the intervenors acknowledge that retroactive relief is barred by the Eleventh Amendment, but they insist that the payments they seek do not constitute retroactive relief. They seek two types of payment in particular: (1) payment for claims that were not submitted until after the Court's June 3, 1992 Order; and (2) payment for claims that were submitted before the June 3, 1992 Order to obtain the partial reimbursement permitted by the regulation.

### DISCUSSION

### A. Motion to Intervene

Rule 71 of the Federal Rules of Civil Procedure states: "When an order is made in favor of a person who is not a party to the

---

1. The regulation originally was codified at N.Y.Comp.Codes R. & Regs. tit. 18, § 360.10.

2. Two permutations were possible: (1) If the reasonable Medicare charge was more than the scheduled Medicaid fee (as was usually the case), the provider had to accept the Medicaid fee as full payment; (2) If the reasonable Medicare charge was less than the scheduled Medicaid fee, the provider received the difference between the

80% that Medicare paid and the *lower* of (a) the scheduled Medicaid fee, or (b) the 100% Medicare charge. Thus, only if the scheduled Medicaid fee was higher than the full reasonable Medicare charge—an unusual case—did a provider receive the full payment that would ordinarily be received by the combination of the 80% Medicare and 20% personal responsibility.

action, that person may enforce obedience to the order by the same process as if a party. . . ." Fed.R.Civ.P. 71. " 'Rule 71 was intended to assure that process be made available to enforce court orders in favor of and against persons who are properly affected by them, even if they are not parties to the action.' " *Berger v. Heckler,* 771 F.2d 1556, 1565 (2d Cir.1985) (quoting *Lasky v. Quinlan,* 558 F.2d 1133, 1137 (2d Cir.1977)).

The June 3, 1992 Order of this Court was "in favor of" the intervenors and "against" the Commissioner, even though the intervenors were not "parties to the action." *Id.* The motions to intervene are granted.

### B. Motion for Contempt

The Eleventh Amendment [3] bars lawsuits in federal court where the party seeking compensation must be paid from public funds in the state treasury. *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Kennecott Copper Corp. v. State Tax Commission,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946). The Supreme Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), clarified the relief permissible under the Eleventh Amendment. The Court stated that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. at 1362. Injunctive relief is aimed at State officials rather than at the State and its funds. *Id.* at 663–68, 94 S.Ct. at 1355–58 (explaining *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

### 1. Previously Unsubmitted Claims

█ Plaintiffs and the intervenors assert that they are entitled to recover on all claims submitted after the June 3, 1992 Order. Defendants respond that the June 3, 1992 Order cannot apply to claims for services rendered prior to the Order, and that in any event, most of those claims are barred by an independent regulation that requires submission of claims within 90 days after services are rendered. N.Y.Comp.Codes R. & Regs. tit. 18, § 540.6(a).

### a. Injury: Services Rendered versus Claims Submitted

The Commissioner has refused payment of claims for services rendered prior to the Court's June 3, 1992 Order. That refusal is based upon his position that injury occurs for purposes of the Eleventh Amendment when services are rendered, not when claims are submitted or acted upon.

The parties cite discordant precedents. Some of the cases indeed indicate that injury occurs when services are rendered. Perhaps the most extensive discussion is found in *Kimble v. Solomon,* 599 F.2d 599 (4th Cir.), *cert. denied sub nom. Buck v. Kimble,* 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979):

> A court of equity not subject to the eleventh amendment could order expansive relief. . . . First, retrospectively, those eligible recipients who had managed to obtain medical services despite the reductions would be paid benefits for such services in accordance with pre–1976 state law. Second, prospectively, those recipients who receive services after the court's order would be paid benefits under pre–1976 law. . . .
>
> We think that the first, retrospective component of this relief would be barred by the eleventh amendment. Although the recipients who have already received medical services are arguably entitled to benefits under pre–1976 law, Maryland's obligation to pay those benefits arose at the time the treatments were received, and the state has denied them. . . .
>
> By contrast, the eleventh amendment offers no impediment to the second, prospective component of relief outlined above. This prospective relief looks to the future and requires payments only for medical services received after entry of the court's decree. . . . [T]he state's liability

---

**3.** The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

for payments would not be fixed until recipients seek and receive medical services after the district court has entered its order.

*Id.* at 604–605. *See also Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1362 (5th Cir.1980) ("[T]he district court's order denied ... relief for services provided prior to October 18, 1977, the date of the court's ruling. The effect of an award granting [plaintiffs] their requested relief will require the payment of state funds as a result of a past breach of a legal duty on the part of the state. Since this relief is retroactive ... plaintiffs' action ... is barred by the Eleventh Amendment."), *rev'd on other grounds sub nom. Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Wisconsin Hosp. Ass'n v. Revitz,* 630 F.Supp. 1015, 1019–20 ("[The Eleventh Amendment] issue's determination in the present case hinges on whether the State's legal obligation to reimburse the plaintiff hospitals for services rendered arose upon the services' performance or upon Final Settlement.... The Court is more conceptually at ease with the notion that the State's legal obligation to pay for the services rendered by the plaintiff hospitals accrued upon the rendering of those services."), *aff'd in part, vacated in part, and remanded,* 820 F.2d 863 (7th Cir.1987); *Meeker v. Manning,* 540 F.Supp. 131, 141–42 (D.Conn.1982) (denying relief under Winter Energy Assistance Program for "utility or fuel bills incurred prior to the date of th[e] court's decree," because "[w]here a federal court orders the payment of a definable amount of money to correct past errors, the state will not have an opportunity to change its course of conduct to minimize the cost should it decide not to assume [the] added cost."); *Friendship Villa–Clinton, Inc. v. Buck,* 512 F.Supp. 720, 725 (D.Md.1981) ("[Plaintiff] is claiming reimbursement for services which have already been provided. The fact the precise amount of the reimbursement has not yet been determined ... does not alter the further fact that the relief plaintiff seeks ... is payment ... of more money ... than plaintiff has received to date.").

Plaintiffs and the intervenors distinguish the foregoing cases on the ground that, with one exception, the claims in those cases had already been processed by the time of the court orders. The one exception, *Meeker,* involved claims that had been submitted by the time of the court order.

Plaintiffs and the intervenors cite their own battery of precedents that support the position that injury occurs not when services are rendered, but when claims are improperly reimbursed. The clearest of these cases is *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Servs.,* 754 F.Supp. 1502 (D.Kan.1990), *rev'd on other grounds,* 958 F.2d 1018 (10th Cir.1992), where the court found that "the injury suffered by providers from reimbursement at an inadequate rate occurs at the time of reimbursement, not at the time services are rendered. Accordingly, the Eleventh Amendment does not preclude the injunction from applying to all reimbursement payments made after entry of the injunction...." *Id.* at 1517.

Plaintiffs and the intervenors assert that decisions in this circuit indicate that the date of injury is the date of either submission or improper reimbursement. The Court of Appeals for the Second Circuit in *Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093 (2d Cir.1991), reversed a district court's injunction ordering payment of funds that the State had already decided to withhold pending an audit. The *Tekkno* court mentioned that the injunction "could have prospective effect if [the plaintiff] had submitted new claims after [the injunction]," and thus suggested that the date of submission was important. *Id.* at 1098.

The district court in *Rye Psychiatric Hosp. Center, Inc. v. Surles,* 777 F.Supp. 1142 (S.D.N.Y.1991), suggested that the date of improper reimbursement was important:

Here, the injuries involved took place when plaintiff was reimbursed according to rates legally improper under the Boren Amendment. The portion of plaintiff's action relating to inadequate payments and improper rate methodologies occurring since July 2, 1991, the date on which this court held the minimum utilization adjustment null

and void, represents injuries arising after the court issued its decision. Relief for these injuries is clearly prospective in nature. However, redressing plaintiff's claims of inadequate Medicaid reimbursement paid prior to the court's earlier decision ... smacks of a retroactive award. These injuries occurred prior to the court's decision.

*Id.* at 1147 (footnote omitted).

The prospective relief with which defendants must comply relates to the reimbursement rates set and payments made after July 2, 1991, the date of this court's original decision.... However, if defendants have not removed the voided adjustment from all reimbursements made after July 2, 1991, the court retains the inherent authority to effectively enforce its order.

*Id.* at 1151. The *Rye* court cited with approval decisions that had "reached like conclusions," including *Kansas Health Care. See also New York Health & Hosps. Corp. v. Blum,* 678 F.2d 392, 397 n. 4 (2d Cir.1982) (case might not be mooted by change in regulation if claims remained unpaid); *Temple Univ. v. White,* 732 F.Supp. 1327, 1327, 1329 (E.D.Pa.1990) ("Eleventh Amendment considerations preclude mandating additional payments on a retroactive basis—*i.e.,* recalculating payments made to plaintiff before [the date of the court order]," but "[t]he defendants will be ordered to apply that rate with respect to all bills paid or to be paid on or after [the date of the court order]."), *aff'd,* 941 F.2d 201 (3d Cir.1991), *cert. denied. sub nom. Snider v. Temple Univ.,* —— U.S. ——, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

The cited cases are in considerable tension if not outright conflict. The Court finds itself unbound by any clear precedent, and in need of a persuasive rationale for adopting one side's approach to the problem. The Commissioner seeks a holding that "the State's breach of legal duty ... occurs not when claims for reimbursement might be submitted and/or paid, but when the services are rendered." Mem. of L. in Opp'n at 13. Two rationales for this approach are expressed in the cases cited by the Commissioner. First, as expressed in *Kimble,* a State's legal obligation to pay accrues when services are provided. Second, as expressed in *Meeker,* a State is deprived of real autonomy if it cannot know the nature of the obligations it enters. These rationales emphasize the State's desire—and purported Eleventh Amendment right—to set its obligations unless and until a federal court alters its obligations for the future.

In the present case, the Commissioner contends that New York's obligations were set by enactment of the challenged regulation and provision of services. Any alteration of obligations as they existed at the time of services is submitted to be an impermissible retroactive reordering of the State's affairs.

Plaintiffs and the intervenors maintain that the question is not when the State's obligations were theoretically set, but when the State's action caused real injury to plaintiffs and the intervenors. Real injury to an insurance claimant, it is argued, does not occur until a claim is submitted and denied.

Each side criticizes the other's approach as inconsistent with Supreme Court precedent. The Commissioner contends that services provided under a set regulatory regime give rise to an " 'accrued monetary liability' " that cannot be altered by a federal court consistently with the Eleventh Amendment. Mem. of L. in Opp'n at 10 (quoting *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356). Plaintiffs and the intervenors contend that insurance obligations do not accrue until claims are submitted, and that unsubmitted claims are thus like unsubmitted welfare applications: mere potential liabilities that the Supreme Court would not recognize as "accrued" for purposes of the Eleventh Amendment. Reply Mem. at 27 ("In *Edelman,* Illinois' liability accrued, at the earliest, when the welfare recipients *submitted applications* for assistance.... To say here that New York's liability accrued when the providers rendered services is no different than arguing that Illinois' liability accrued when the recipients became needy. The arguments are frivolous.").

■■■ The question is a close one, but the Court finds that the weight of logic and authority favors plaintiffs' and the interve-

nors' position. Federal courts must refrain from attempts to right past State wrongs, but may order state officials to desist from continued implementation of unlawful practices. A state official who receives an insurance claim need not process it according to a regulation that has been found unlawful. The claim can instead be lawfully processed. The Court thus does not simply order payment of funds "as a form of compensation," but orders "[s]tate officials . . . to shape their official conduct to the mandate of the Court's decree[ ]." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. A federal court does not offend the Eleventh Amendment by directing a State official to process an insurance claim according to a lawful practice defined in the court's order rather than by an unlawful prior State practice.

b. Injury: Expiration of 90 Day Limit

██ The Commissioner next contends that although the claims were not processed before the June 3, 1992 Order, they still cannot be paid because they are barred by a separate regulation requiring submission within 90 days after services are provided. N.Y.Comp.Codes R. & Regs. tit. 18, § 540.-6(a) (1987). For most of the claims at issue here, the 90 day period expired before this Court's June 3, 1992 Order.[4]

The Commissioner's reasoning has merit. The 90 day regulation is an independent and valid ground upon which the Commissioner rightly may reject the claims.[5] Rejections based on the 90 day limitation period are not affected by the Court's June 3, 1992 Order. The Court has no business reviewing such rejections.

Plaintiffs and the intervenors concede that they withheld claims beyond the 90 day period, but contend that they were following the Commissioner's instructions. They assert that the Commissioner should not gain the benefit of the 90 day limitation period when

it was he who announced that claims should not be submitted and would be denied if submitted. But these facts actually weigh against granting relief. The Commissioner's announcement that claims would be denied, combined with the withholding of claims beyond the 90 day period, resulted in injury to plaintiffs and the intervenors. That injury was complete no later than the expiration of the 90 day period. To now order payment of those claims would constitute retroactive relief barred by the Eleventh Amendment.

██ A limitation period on submission of claims is an appropriate mechanism for a State to protect itself from uncertainty, and is consistent with the concern for State autonomy reflected in the Eleventh Amendment. Potential plaintiffs who wish to "end run" the Eleventh Amendment by withholding claims pending a Court decision cannot challenge the limitation period that thwarts their strategy. The position advanced by plaintiffs and the intervenors would abrogate both the letter of the 90 day provision and the spirit of the Eleventh Amendment. The motion for contempt with respect to unsubmitted claims must be denied to the extent relief is sought for claims that expired under the 90 day regulation before the June 3, 1992 Order.

An exception, however, must be recognized for claims that were less than 90 days old on June 3, 1992. The Court's Order directed the Commissioner to "pay the full [Medicare Part B] deductible and coinsurance liability" for dually eligible persons. The Commissioner has refused to pay any claims for services rendered before the Court's Order, including claims that had not expired under the 90 day limitation period before the Order.

The Court's Order encompassed all claims that were properly submittable on June 3, 1992. Continuation of the Commissioner's policy violated this Court's Order to the ex-

---

4. Plaintiffs state that

   [i]n accordance with the Regulation and the DSS letter to providers, between January 1, 1987 (the effective date of the Regulation) and June 2, 1992 certain of the Intervenors submitted no claims . . . with respect to services provided to crossovers and other QMBs in that period. HHC and certain of the Intervenors

submitted claims to secure the reimbursement that was payable when the Medicaid rate exceeded the 80% Medicare payment for the service.

   Mem. in Supp. at 6.

5. The validity of the 90 day limit has not been challenged.

tent the policy was applied to properly submittable claims. Among those properly submittable claims were those yet unexpired under the 90 day regulation as of June 3, 1992. The motion by plaintiffs and intervenors for contempt is, to the extent of those claims, granted.

2. Resubmitted Claims

■ Plaintiffs and the intervenors also request relief for resubmitted claims that purportedly "were not in fact originally submitted for purposes of securing the reimbursement barred by the Coinsurance Regulation." Pl.'s Reply Memo at 28. Those claims were partially reimbursable under the challenged regulation, and plaintiffs and the intervenors assert that they intended the submissions as claims for the reimbursable parts, not as claims for the Medicare Part B deductibles and coinsurance. Thus, they equate the deductibles and coinsurance to the unsubmitted claims discussed in the preceding section.

The claims surely cannot be paid if they were submitted and rejected prior to the date of this Court's Order. The Second Circuit in *Tekkno* reversed a district court's injunction that required the State "to pay moneys out of its treasury in compensation of claims submitted ... 'prior to the date of th[e] order.'" *Id.* at 1098. The district court "had no power in light of the Eleventh Amendment to award past-due ... benefits that 'should have been paid, but [were] not.'" *Id.* (quoting *Edelman*, 415 U.S. at 664, 94 S.Ct. at 1356).

The question is whether plaintiffs and the intervenors can escape the submission of the claims by characterizing the submission as having a limited purpose: recovering the portion that was recoverable. The Court finds that they cannot.

In the first place, most resubmitted claims no doubt would be barred by the 90 day regulation in accordance with the discussion of unsubmitted claims. According to plaintiffs and the intervenors, the unrecoverable portions of the claims were withheld. Withheld claims lapse after 90 days. The Court has found that the June 3, 1992 Order cannot resuscitate claims that expired under the 90 day limit, both because the 90 day period is

an independent valid ground for rejecting the claims, and because the claims were effectively rejected at the end of the ninetieth day so that ordering their payment would violate the Eleventh Amendment. The same reasoning applies to claims that were "partially withheld."

A closer question is presented by claims for services rendered less than 90 days before the Court's Order. The Court found above that unsubmitted claims less than 90 days old at the time of the Order still can be recovered. If the Court were to accept the characterization of certain claims as "partially withheld," then consistency might require relief on those claims to the extent they were less than 90 days old on June 3, 1992.

The Court finds that the appropriate inquiry is not what a claimant's intent was in submitting a claim, but what a State official's action was in processing the claim. If claims were processed in accordance with a regulation subsequently held unlawful, any attempt to resuscitate those claims is impermissible.

As far as the evidence in this case shows, the officials who processed the original claims were carrying out the challenged regulation. The officials allowed only the portions of the claims recoverable under the regulation. Determinations were made, and to revisit those determinations would "resemble[ ] far more closely [a] monetary award against the State itself ... than ... prospective injunctive relief." *Edelman*, 415 U.S. at 665, 94 S.Ct. at 1357.

Indeed, the reasoning of plaintiffs and the intervenors would substantially destroy the States' Eleventh Amendment protection. Plaintiffs would henceforth submit claims for as much as they could receive under a challenged regulation, while "partially withholding" or reserving their rights with respect to amounts that the regulation denied. The claims would then be resubmitted once a federal court order corrected the regulation. This truly would be an end run around the Eleventh Amendment—an attempt to recover benefits that "should have been paid, but [were] not." *Id.* at 664, 94 S.Ct. at 1356.

The motion for contempt is denied with respect to resubmitted claims.

## CONCLUSION

The motions to intervene are granted.

The motion to hold the Commissioner in contempt is granted with respect to those claims that were not submitted and had not expired under the regulatory 90 day limitation period before this Court's Order on June 3, 1992. The motion to hold the Commissioner in contempt is denied in all other respects.

It Is So Ordered.