599 F.2d 599
 Betty KIMBLE, Horace Lancaster, Thelma Eaton, Individually
and on behalf of all others similarly situated, Appellants,
v.
Neil SOLOMON, Secretary of Health and Mental Hygiene of the
State of Maryland, Appellee.
 No. 77-2316.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 15, 1978.
Decided June 5, 1979.
 
 Herbert Semmel, Center for Law and Social Policy, Washington, D. C. (Dennis Sweeney, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellants.
 Randall M. Lutz, Asst. Atty. Gen., Baltimore, Md. (Francis B. Burch, Atty. Gen. of Maryland, and Louise T. Keelty, Asst. Atty. Gen., Baltimore, Md., on brief), for appellee.
 Before WINTER and PHILLIPS, Circuit Judges, and HOFFMAN,* District judge.
 WINTER, Circuit Judge:
 
 
 1
 In this appeal, it is not disputed that the State of Maryland instituted an across-the-board reduction in Medicaid benefits without complying with federal regulations requiring individual notice to affected recipients. The only question is what relief may be given by the district court. The district court ordered the state to comply with federal notice regulations when instituting any future reductions, but reluctantly it held that the eleventh amendment barred any further relief. We think that the eleventh amendment permits an order requiring the prospective restoration of benefits to a limited class. We therefore reverse the judgment in part and remand the case to the district court for entry of such an order.
 
 I.
 
 2
 Maryland has elected to participate in a plan, popularly known as Medicaid, to provide medical assistance to the needy under title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396k. Payments on behalf of eligible recipients are made for medical services actually received. Subject to limits provided by federal law, each participating state may decide which medical services are to be included within the coverage of its Medicaid program.
 
 
 3
 When a participating state changes its law to reduce or eliminate grants for classes of recipients, it is required by federal regulations to give notice that is both "timely" and "adequate." 45 C.F.R. § 205.10(a)(4) (1978). Notice is "timely" if it is mailed at least ten days before the date on which the reduction becomes effective. Id. § 205.10(a)(4)(i)(A). It is "adequate" if it includes "a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued." Id. § 205.10(a)(4)(iii).
 
 
 4
 On November 3, 1975, the Governor of Maryland, citing a projected deficit of 9.7 million dollars in the state Medicaid budget, directed the defendant, Secretary of Health and Mental Hygiene, to reduce the extent of coverage in the program. On November 12, 1975, the Secretary published a notice in the Maryland Register proposing new regulations that would eliminate or curtail Medicaid coverage for certain types of medical services.[1] The notice stated that a public hearing would be held on December 1, 1975, and that the new regulations would go into effect on January 1, 1976. The new regulations became final, as scheduled, effective January 1, 1976. No notice of the reductions was sent to individual recipients, as required by the federal regulations, prior to the effective date. The state did mail a summary of the program changes to all recipients, however, between February 1 and February 17, 1976.
 
 
 5
 On February 11, 1976, this class action was brought to challenge the Medicaid reductions for failure to provide notice and a hearing as required by the due process clause of the Constitution and for failure to comply with the federal notice regulations. The named plaintiffs were three Medicaid recipients who claimed to be in need of medical services that were eliminated from coverage by the January 1, 1976 revisions, and they purported to represent a class consisting of "all recipients under the Medicaid program of Maryland." The complaint sought both reimbursement for expenditures for health care incurred since January 1 which would have been covered by Medicaid before the reductions took effect and prospective restoration of the benefits for future treatments.
 
 
 6
 On November 4, 1976, the district court issued its memorandum opinion. It certified the plaintiff class and granted partial summary judgment for the plaintiffs.[2] The district court held that the state had failed to comply with the federal notice regulations by the notice published in the Maryland Register because the notice was not mailed to each recipient and it was not phrased in language that a typical recipient could possibly understand. The district court also ruled that the statements sent to recipients during February 1976 were not in compliance with these regulations because (a) they were not "timely," since they were not mailed ten days before the effective date of the reductions, and (b) they were not "adequate," since they did not state the reasons for the reductions or the circumstances under which a hearing might be obtained and assistance continued. The district court further held, however, that the plaintiffs had no statutory or constitutional right to a hearing prior to the reductions.[3]
 
 
 7
 Turning to the question of relief, the district court reasoned that since the notice was inadequate chiefly for its failure to inform the recipients of the opportunity for a hearing but plaintiffs had no right to a pre-reduction hearing, it would be "farcical" to require that benefits under pre-1976 state law be continued until "adequate" notice is given. The district court further stated that a "strong equitable argument" could be made for ordering that plaintiffs be reimbursed for medical treatment received between January 1, 1976 and February 26, 1976 (ten days after the last individual notice was sent) to the extent that such treatment was covered before the challenged reductions. The court directed counsel to prepare an order consistent with its opinion.
 
 
 8
 In the course of negotiations between the parties on the drafting of the proposed order, the question of the effect of the eleventh amendment on permissible relief was raised for the first time in the proceedings. After a number of communications between counsel and the district court, the court issued its order on August 18, 1977. The order required that the state comply with federal notice requirements when implementing any future across-the-board reductions in Medicaid benefits, but it denied all other relief. The order was accompanied by a letter to counsel from the district judge, which stated in part:
 
 
 9
 I confess that I find the signing of this order as distasteful as anything I have done in my capacity as a judicial officer. However, I have reviewed the applicable law, and this action is taken reluctantly in light of the language of (Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). . . . I have considered alternative forms of relief and I am satisfied that none would stand the scrutiny of appellate review.[4]
 
 
 10
 Plaintiffs appeal from the order denying any further relief. They contend that the district court had the power, notwithstanding the eleventh amendment, to order a prospective restoration of Medicaid benefits until ten days after the state has sent a notice of reductions in compliance with the federal regulations. This prospective relief would not take effect until the date of entry of an injunction against the defendant (or some future date specified in the injunction) and would require the state to make payments for medical treatments received after that date which would have been covered under pre-1976 state law.[5] We agree that this relief would be appropriate and would not be prohibited by the eleventh amendment.
 
 II.
 
 11
 By its own terms, the eleventh amendment excludes from federal jurisdiction suits against a state by citizens of another state or of a foreign state, and it has long been established that the same principle bars federal suit against a state by its own citizens as well. See, e. g., Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is also well established, however, that a federal litigant can in appropriate circumstances obtain federal injunctive relief against a state officer under the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That case permitted a federal court action against the Attorney General of Minnesota to enjoin him from enforcing a state statute claimed to be unconstitutional.
 
 
 12
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court made clear that the doctrine of Ex parte Young permits suits for prospective relief only, and that the eleventh amendment precludes retrospective relief in the nature of a monetary award against the state, even if the suit is brought against a state officer rather than the state itself. In Edelman, recipients under the Aid to the Aged, Blind, and Disabled program sued the director of the Illinois Department of Public Aid for failure to observe federal time limits for the processing of applications for aid. The district court had issued an injunction requiring compliance with the federal regulations in the future and also ordering the defendant to pay eligible applicants past benefits wrongfully withheld. The Supreme Court upheld the prospective injunctive relief but reversed the order for payment of state funds. Such relief, the Court held, was retrospective only and was therefore prohibited by the eleventh amendment.
 
 
 13
 The distinction between prospective and retrospective relief was refined in Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). In that case, the district court had ordered the establishment of certain remedial educational programs to counteract the effects of De jure segregation in Detroit public schools and had directed that part of the cost of the program be paid by the State of Michigan. Even though the decree directly ordered the expenditure of state funds, the Supreme Court upheld it from eleventh amendment attack. The Court reaffirmed the doctrine of Ex parte Young that "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." Id. at 289, 97 S.Ct. at 2762. The Court explained that the order for payment of state funds was not retrospective, as it was not "a raid on the state treasury for an accrued monetary liability." Id. at 290 n.22, 97 S.Ct. at 2762 n.22. Finally, the Court made clear that relief can be compensatory without being retrospective: "That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates Prospectively to bring about the delayed benefits of a unitary school system." Id. at 290, 97 S.Ct. at 2762 (emphasis by the Court).
 
 III.
 
 14
 In determining what relief in the instant case is prospective and may be granted consistent with the eleventh amendment and what relief is retrospective and barred by the eleventh amendment, we begin by considering the extent of the injury to plaintiffs.[6] Maryland's failure to send "timely" and "adequate" notice of the 1976 reductions was not a mere technical or procedural default, but rather resulted in the loss to Medicaid recipients of important substantive rights. The purpose of the same notice requirement was explained by the Secretary of Health, Education and Welfare in a case involving the Aid to Families with Dependent Children program:
 
 
 15
 The Secretary urges that even in cases of across-the-board reductions such advance notice is necessary, or at least appropriate, for the orderly administration of welfare programs. He urges that in a program designed to meet subsistence needs recipients ought to be informed in advance if their payments are to be cut for any reason, so that they may be able to plan for the cut, and to the extent possible adjust to it.
 
 
 16
 Rochester v. Baganz, 479 F.2d 603, 606 (3 Cir. 1973). Thus, the mailing of an adequate and timely notice to Medicaid recipients in the instant case would have informed them that certain types of medical services would be sharply curtailed within a few days and that any recipient in need of such services should obtain them promptly, while benefits remained available. Because such notice was not given, Maryland recipients had an opportunity neither to plan for the reductions nor to the extent possible to adjust to them, because by the time the tardy notice was sent the reductions had been put into effect.
 
 
 17
 Where, as here, Maryland failed to comply with the notice regulations, it has not instituted a legally effective reduction in its Medicaid benefits. A court of equity not subject to the eleventh amendment could order expansive relief for this violation. This relief would have two components: First, retrospectively, those eligible recipients who had managed to obtain medical services despite the reductions would be paid benefits for such services in accordance with pre-1976 state law. Second, prospectively, those recipients who receive services after the court's order would be paid benefits under pre-1976 law until the state effects a legal reduction of benefits by mailing adequate and timely notice at least ten days before the effective date of the reduction.
 
 
 18
 We think that the first, retrospective component of this relief would be barred by the eleventh amendment. Although the recipients who have already received medical services are arguably entitled to benefits under pre-1976 law, Maryland's obligation to pay these benefits arose at the time the treatments were received, and the state has denied them. To require the state to make payments for these past medical services would be tantamount to " 'the award of an Accrued monetary liability . . .' which represent(s) 'retroactive payments.' " Milliken v. Bradley, 433 U.S. at 289, 97 S.Ct. at 2761 (quoting Edelman v. Jordan, 415 U.S. at 663-64, 94 S.Ct. 1347) (emphasis supplied by the Milliken Court). This was the type of relief originally proposed by the district court in its memorandum opinion of November 4, 1976 payment of benefits for treatment Already received between January 1, 1976 and February 27, 1976. The district court later correctly ruled that such retrospective relief may not be ordered against a state by a federal court.
 
 
 19
 By contrast, the eleventh amendment offers no impediment to the second, prospective component of relief outlined above. This prospective relief looks to the future and requires payments only for medical services received after entry of the district court's decree. Such relief would hardly constitute "the award of an accrued monetary liability." To the contrary, the state's liability for payments would not be fixed until recipients seek and receive medical services after the district court has entered its order. This is the very form of relief now proposed by plaintiffs, and the district court was incorrect in concluding that such relief was barred by the eleventh amendment.
 
 IV.
 
 20
 We therefore vacate the order of the district court insofar as it denied relief other than a mandatory injunction to comply with 45 C.F.R. § 205.10(a) (4) when implementing across-the-board revision to reduce Medicaid benefits, and remand the case for entry of a decree embodying the following provisions: Maryland should be required to pay Medicaid benefits according to pre-1976 state law for medical services received by any plaintiff after the date that the district court's revised decree is entered and to give notice of the restoration of benefits by mail to members of the class entitled thereto. This prospective reinstatement of benefits shall continue until at least ten days after Maryland has mailed to each plaintiff a separate, timely and adequate notice of the reduction. Because of the unusual situation of a restoration of benefits to be followed by a termination of benefits, the district court, in the exercise of its discretion, may conclude to order supplementary notice of the restoration by publication or otherwise. The district court, in the exercise of its discretion, may also conclude to permit Maryland to combine in the notice to be mailed to potential beneficiaries a notice of the prospective reinstatement of benefits with the required notice of reduction, in which event the period of reinstatement of benefits shall continue for ten days after Receipt of the combined notice.
 
 
 21
 In light of the nature of the relief which the district court will order, it will also be necessary for it to redefine the class certified to receive prospective benefits. The district court certified the class of plaintiffs as "all recipients of benefits under the Maryland Medical Assistance Program (Medicaid)." For purposes of relief other than a general injunction about future notice of across-the-board reductions, this class designation is overly broad, since it would include those persons who have become eligible for Medicaid since the reductions were first instituted in 1976. We think that such persons had no right to be sent notice of the reductions, since at that time they were not affected by the reductions; and, lacking such right, they should not share in the reinstated benefits. Likewise, those persons who had received some Medicaid benefits in the past, but who were no longer eligible to receive benefits at the time that the reductions were to go into effect, had no right to a notice of the reductions, and should have no right to the reinstated benefits. For purposes of the reinstatement remedy that we prescribe, the district court should therefore redefine the class to include only those persons who were eligible for Medicaid assistance on December 22, 1975 (ten days before the reductions were to take effect) and for the ten days thereafter.
 
 
 22
 Finally, while pre-1976 state law will govern during the period of reinstatement of benefits, the eligibility of each plaintiff to receive such benefits will depend on his Current needs. Thus, a plaintiff who has acquired enough assets since 1976 that he is no longer financially eligible for any benefits, or a plaintiff who does not require any medical services during the period of reinstatement, should not receive benefits simply because he was financially needy or required medical services in early 1976. To base the state's current Medicaid obligations on financial and medical needs as they existed in 1976 would constitute retrospective rather than prospective relief.
 
 
 23
 VACATED AND REMANDED.
 
 WALTER E. HOFFMAN, District Judge, dissenting:
 
 24
 If Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), has any continuing vitality, it assuredly would not permit to be done indirectly what it cannot do directly. If the majority opinion in this case is good law, it would result in the complete destruction of the 1974 Supreme Court decision by devising allegedly prospective procedures for the purpose of assuring the payment of retrospective benefits. The majority cites no precedent for its action. It may be fair and equitable in a given case such as this, but to me it is a unique device to avoid the Supreme Court ruling. I would affirm the district court.
 
 
 
 *
 Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 As stipulated by the parties, the regulations would (a) limit the coverage of non-prescription drugs to insulin, needles, and syringes and require a 50% Co-payment on all prescriptions; (b) eliminate all non-emergency dental services for persons over 21 years of age; (c) limit routine podiatry services to recipients who are diabetic or who have a lower extremity vascular condition; (d) limit recipients over 21 years of age to one eye examination and one pair of eyeglasses every two years unless waived by the Department as a medical necessity, and recipients under 21 years of age to one eye examination and one pair of eyeglasses each year unless waived by the Department as a medical necessity; (e) limit inpatient hospital services for recipients to those services determined medically necessary by the Professional Standards Review Organization; (f) limit coverage of disposable medical supplies to certain ostomy and incontinent supplies, needles, and syringes, and curtail the coverage of durable medical equipment; and (g) require a physician's preauthorization for all non-ambulatory and non-emergency ambulance use
 
 
 [2]
 Relying on our decision in Blue v. Craig, 505 F.2d 830 (4 Cir. 1974), the district court determined that it had jurisdiction under 28 U.S.C. § 1343(3), without regard to the amount in controversy, over a claim that state officials are administering a Social Security program in violation of federal regulations. Since the district court's decision, however, the Supreme Court has held in Chapman v. Houston Welfare Rights Organization, --- U.S. ----, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that the jurisdictional grant of § 1343(3) does not encompass a claim that a state welfare regulation is invalid because it conflicts with the Social Security Act
 As an alternative basis for jurisdiction, the district court determined that it had jurisdiction under § 1343(3) over plaintiffs' constitutional due process claim and then asserted pendent jurisdiction over the claim of violation of the federal notice regulations. This procedure was approved by the Supreme Court in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Although plaintiffs' constitutional claim was ultimately rejected by the district court, its discussion of the issue demonstrated that the claim was not "frivolous or so insubstantial as to be beyond the jurisdiction of the District Court," Id. at 539, 94 S.Ct. at 1380. See also Mothers' & Children's Rights Organization v. Sterrett, 467 F.2d 797 (7 Cir. 1972).
 
 
 [3]
 On appeal, plaintiffs do not question the correctness of this ruling
 
 
 [4]
 The substance of this letter adequately refutes the state's contention on appeal that the district court did not rely solely on the eleventh amendment and that it denied relief by balancing the equities
 
 
 [5]
 At oral argument before us, the question arose whether plaintiffs had requested this relief before the district court. We believe that paragraph C of the prayer for relief in the plaintiffs' complaint, asking the district court to "(e)njoin the defendant from enforcing the reduction in assistance under the Medicaid program," can fairly be read to request the same relief as plaintiffs now seek on appeal
 
 
 [6]
 The defendant has devoted much attention in his brief to the question whether the relief sought by plaintiffs is addressed to a "continuing wrong" or merely to the continuing effects of a past wrong. We think that the answer is irrelevant. As the Edelman and Milliken cases show, the proper focus of eleventh amendment scrutiny is on the nature of the relief sought, not of the wrong committed. See also Quern v. Jordan, --- U.S. ----, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)