**Junius WILSON, by his Guardian Ad Litem, Helen HINN, Plaintiff,**

v.

**The STATE of NORTH CAROLINA, et al., Defendants.**

No. 5:94–CV–878–BR3.

United States District Court,
E.D. North Carolina,
Western Division.

June 30, 1997.

Anita S. Hodgkiss, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, Charlotte, NC; Genevieve C. Sims, Raleigh, NC, James E. Ferguson, II, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., Charlotte, NC, Sharon D. Jumper, Charlotte, NC, for plaintiff.

Robert T. Hargett, Assoc. Atty. Gen., Ronald M. Marquette, Spec. Dept. Atty. Gen., Michelle Bagley McPherson, Bruce S. Ambrose, N.C. Dept. of Justice, Raleigh, NC, Robert H. Sasser, III, Mark Allen Davis, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, Walter Brock, Jr., Young, Moore, Henderson & Alvis, Raleigh, NC for defendants.

*ORDER*

BRITT, District Judge.

This case is before the court on (1) defendants' motion for summary judgment on (a) plaintiff's claim under 42 U.S.C. § 1981; (b) plaintiff's Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") claims; and (c) plaintiff's claims for injunctive relief; (2) defendants' motion to strike certain exhibits submitted by plaintiff with his response to defendants' motion for summary judgment; and (3) defendants' second motion *in limine*.

The facts of this case have been set out in prior orders of this court and need not be reiterated here.

## I. *Discussion*

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Patterson v. McLean Credit Union*, 39 F.3d 515, 518 (4th Cir.1994) (quoting *Shaw v.*

*Stroud,* 13 F.3d 791, 798 (4th Cir.) *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994), 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994)).

## A. *§ 1981 Claim*

Defendants have moved for summary judgment on plaintiff's claim under 42 U.S.C. § 1981. In his response to defendants' motion, plaintiff indicates that he is no longer pursuing a § 1981 claim. (Pl.'s Resp. to Factual Issues ("Pl.'s Resp.") at 2.) Defendants' motion for summary judgment on plaintiff's § 1981 claim, therefore, is GRANTED.

## B. *ADA and RA Claims*

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (1997). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995).

■ To establish a violation under either the RA or the ADA, plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination solely on the basis of the disability. *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 (4th Cir.1995). In this case, it is undisputed that plaintiff has a disability within the meaning of the RA and ADA.

"The inquiry into whether an applicant is otherwise qualified necessarily involves a determination of whether the applicant could have gained access to the program if the recipient of funds had made reasonable accommodations." *Wagner v. Fair Acres Geriatric Ctr.,* 49 F.3d 1002, 1014 (3rd Cir.1995). In *Southeastern Community College v.*

*Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court

> struck a balance between the statutory rights of the handicapped to be integrated into society and the legitimate interests of federal grantees in preserving the integrity of their programs: while a grantee need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.
>
> The balance struck in *Davis* requires that an otherwise qualified individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.

*Alexander v. Choate,* 469 U.S. 287, 300–01, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (citation and footnote omitted). As the United States Court of Appeals for the Fifth Circuit has observed:

> [I]t is clear that the phrase 'otherwise qualified' has a paradoxical quality; on the one hand, it refers to a person who has the abilities or characteristics sought by the grantee; but on the other, it cannot refer only to those already capable of meeting *all* the requirements—or else no reasonable requirement could ever violate section 504, no matter how easy it would be to accommodate handicapped individuals who cannot fulfill it.

*Brennan v. Stewart,* 834 F.2d 1248, 1261 (5th Cir.1988). "The question ... is the rather mushy one of whether some 'reasonable accommodation' is available to satisfy the legitimate interests of both the grantee and the handicapped person." *Id.* at 1262.

■ Plaintiff argues that defendants discriminated against him in violation of the RA and ADA by failing to provide him with the services they provided to the non-deaf patients at Cherry Hospital. In support of his assertion, plaintiff presents the deposition testimony of Dr. A. Barry Critchfield.

Critchfield's deposition states, in relevant part:

Q  What is your opinion regarding whether North Carolina met any obligation [under the ADA and RA] or what obligation did it fail to meet that is clearly identifiable for Mr. Wilson and in what time frame did that occur?

A  I think probably the—well, I guess I would have a real hard time answering that question because assuming Mr. Wilson were not deaf, I doubt that he would have been retained in the hospital for as long as he was.

I assume that there are other patients who are not deaf who have been in hospitals for long periods of time in North Carolina, but there probably would be other mitigating factors that would keep them there in terms of their behavior or their mental illness or whatever that might be. In Mr. Wilson's case, my— and it is just an opinion and nothing more. My opinion is that if he weren't deaf, he probably would not have had to stay in the hospital as long as he did.

(Pl.'s Ex. in Opp'n to Summ. J. ("Pl.'s Ex.") 25 at 55–56.) The deposition continues:

Q  Why didn't [plaintiff] get these services?

A  It is my opinion that it is because he was deaf. Deafness immeasurably complicates any kind of a treatment situation. Especially when you are talking about mental health treatment, 90 percent of the treatment is done through language, and without that communication between physician and patient, I believe that—I believe that that is what caused the lack of delivery of services.

(*Id.* at 57.)

Defendants have moved to strike Critchfield's first answer quoted above. As a preliminary note, defendants' motion is somewhat ironic; they quoted the very answer they seek to strike in their own summary judgment memorandum. (Defs.' Mem. at 22.) Nevertheless, the court need not address defendants' objection to this answer as Critchfield's second answer independently creates an issue of fact regarding whether defendants discriminated against plaintiff on account of his disability. In the second answer quoted above, Critchfield expressly states that plaintiff did not receive services because he was deaf.

Plaintiff further argues that defendants failed to provide him with the following accommodations: (1) sign language instruction; (2) contact with other deaf persons on a sustained daily basis; (3) adequate physical therapy following his stroke in 1986 in order to rehabilitate his right hand; and (4) interpreters with sign language skills.

Defendants suggest that it would be unreasonable to require them to accommodate plaintiff by providing him with sign language instruction, contact with other deaf persons on a sustained daily basis, and physical therapy. The question of the reasonableness of these accommodations is a question of fact precluding summary judgment. *See School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1130, 94 L.Ed.2d 307 (1987) (to determine whether plaintiff is otherwise qualified for the job in question, "the district court will need to conduct an individualized inquiry and appropriate findings of fact").

Defendants seem to concede that it would not be unreasonable to require them to provide plaintiff with a sign language interpreter. Rather, they argue that "[plaintiff's] limited signing ability means that he—unlike many deaf people—is not otherwise qualified to benefit from programs and services by the mere expedient of having a qualified signer act as his interpreter, and this is especially so since his stroke in 1986." (Defs.' Reply at 9 n. 11) Again, the question of whether an accommodation is reasonable under the circumstances is a factual one not to be resolved by the court on summary judgment.

Finally, defendants argue that plaintiff's RA and ADA claims cannot survive summary judgment because he has not been denied any services. Defendants argue that plaintiff has failed to establish a lack of effective communication since 21 October 1986 and that "plaintiff's evidence shows that there is and has been sufficient communication to meet [plaintiff's] medical, safety and self-care

needs." (*Id.* at 8.) The issue, however, is not whether there has been sufficient communication to meet plaintiff's medical, safety and self-care needs. The relevant issue is whether there has been sufficient communication to provide plaintiff with the same level of services as those received by non-deaf patients. This issue of fact precludes summary judgment.

For the reasons discussed above, defendants' motion for summary judgment on plaintiff's ADA and RA claims is DENIED.[1]

### C.  Plaintiff's Claims for Injunctive Relief

Plaintiff seeks injunctive relief on his claims brought under 42 U.S.C. § 1983. He has named as defendants the State of North Carolina and individual state officers.

■ Defendant correctly argues that the State of North Carolina is not a person within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and that, therefore, plaintiff's § 1983 claims against the state cannot succeed. Thus, defendants' motion for summary judgment on plaintiff's § 1983 claims for injunctive relief against the State of North Carolina is GRANTED.

■ Next, defendants argue that the Eleventh Amendment bars injunctive relief against the individual state officer defendants. Plaintiff responds by arguing that an injunction can be obtained because he is currently suffering the lingering and continuing effects of past constitutional violations.

In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that the Eleventh Amendment does not bar suits seeking to enjoin state officials from committing violations of federal law. As the Supreme Court has explained, the *Young* exception

> focuse[s] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in

which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of the federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 [106 S.Ct. 423, 426, 88 L.Ed.2d 371] (1985) (citation omitted).

*Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986). These authorities suggest that a case implicating only the lingering effects of past violations would not fall within the *Young* exception. Plaintiff, however, has indirectly suggested that *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), compels a different conclusion.

In *Milliken*, the district court found that the City of Detroit had engaged in *de jure* segregation and ordered a remedial plan including a remedial education program for the victims of the discrimination. The state defendants were ordered to pay one-half of the costs attributable to the remedial education program. On appeal to the Supreme Court, petitioner argued, in part, that the requirement that the state defendants pay a portion of the costs associated with the education program was "in practical effect, indistinguishable from an award of money damages against the state based upon the asserted prior misconduct of state officials" and, therefore, barred by the Eleventh Amendment. *Id.* at 289, 97 S.Ct. at 2761. The Supreme Court disagreed finding that the relief ordered by the district court

> fits squarely within the prospective-compliance exception.... That exception, which had its genesis in [*Young*], permits federal courts to enjoin state officials to conform

---

1.  Defendants also argue that plaintiff is not entitled to injunctive relief on his ADA claim because he cannot establish an ongoing violation. The court need not address this argument as plaintiff has clarified that he seeks only damages on his ADA claim. (Pl.'s Resp. at 2; Mem. in Supp. of Pl.'s Resp. ("Pl.'s Mem.") at 1.)

their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury. The order challenged here does no more than that. The decree requires state officials, held responsible for unconstitutional conduct ... to eliminate a *de jure* segregated school system. More precisely, the burden of state officials is ... to take necessary steps to eliminate from the public schools all vestiges of state-imposed segregation. The educational components, which the District Court ordered into effect *prospectively,* are plainly designed to wipe out continuing conditions of inequality produced by the inherently unequal dual school system long maintained by Detroit.

*Id.* at 289–90, 97 S.Ct. at 2762 (citations and quotation omitted). The Court concluded:

[B]y the nature of the antecedent violation, which on this record caused significant deficiencies in communication skills—reading and speaking—the victims of Detroit's *de jure* segregated system will continue to experience the effects of segregation until such future time as the remedial programs can help dissipate the continuing effects of past misconduct. Reading and speech deficiencies cannot be eliminated by judicial fiat; they will require time, patience, and skills of specially trained teachers. That the programs are also "compensatory" in nature does not change the fact that they are part of a plan that operates *prospectively* to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment.

*Id.* at 290, 97 S.Ct. at 2762. Thus, *Milliken* held that the Eleventh Amendment does not bar a federal court from ordering a remedial measure designed to undo the harmful effects of past constitutional violations. Read this way, *Milliken* effectively overrules *Young* and "obliterates the prospective-retrospective distinction." *Clark v. Cohen,* 794 F.2d 79, 90 (3d Cir.) (Becker, J., concurring), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986). As Judge Becker of the Third Circuit has stated: "almost all wrongdoing has continuing effects, and a continuing effects exception would thus virtually emas-

culate the current, prevailing interpretation of the eleventh amendment." *Id.* It may be argued that because subsequent decisions of the Supreme Court have indicated the continuing viability of *Young, see Booth v. Maryland,* 112 F.3d 139, 142 (4th Cir.1997) (citing cases), *Milliken* should be limited to the unique context of school desegregation. However, the Fourth Circuit has indicated that *Milliken* should be more broadly applied. *See Thomas S. v. Flaherty,* 902 F.2d 250 (4th Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990).

*Thomas S.* involved the class action phase of litigation over the constitutional rights of mentally retarded patients in public psychiatric hospitals in North Carolina. The district court found that the defendant violated the patients' substantive due process rights under *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and ordered injunctive relief for the class members in the form of community placements. Included in the class were patients who had been released from the hospitals after the date of class certification. On appeal, defendant argued that the remedial treatment awarded to those patients no longer in state custody constituted compensation for a past violation of law and was barred by the Eleventh Amendment. Citing *Milliken,* the Fourth Circuit disagreed:

The district court's decree does not run afoul of the Eleventh Amendment. The court did not award monetary damages to any class member in contravention of the principles explained in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The court did not order injunctive relief simply to compensate for past violations of a patient's constitutional rights. Thus, if a patient had been previously subjected to unconstitutional conditions but presently was not affected by past unconstitutional practices, the Secretary was not required to provide remedial treatment.

The court's decree only provides prospective relief to class members who were in a hospital on the date the class was certified or who subsequently were admitted to a hospital. The decree addresses the present needs of the patients. Class members discharged from the hospitals

while this action was pending are entitled, under the decree, to the constitutional protection delineated in *Youngberg* in accordance with the standards adopted by the Supreme Court. If the present conditions under which class members live do not meet constitutional requirements as explained in *Youngberg,* or if a patient is presently suffering from unconstitutional conditions imposed while in the hospital, the decree provides appropriate prospective relief. The decree fully comports with the remedy approved in [*Milliken*] and *Clark v. Cohen,* 794 F.2d 79 (3d Cir.1986).

*Id.* at 255 (citation omitted). The Fourth Circuit's reliance on *Clark v. Cohen,* 794 F.2d 79 (3d Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986), is significant.

In *Clark,* a woman who had been confined for thirty years at a state institution for the mentally retarded brought suit alleging that her confinement violated her constitutional rights. She sought declaratory, injunctive, and monetary relief. Plaintiff contended that she should not have been confined at the facility and that as a result of her long confinement, she could not immediately function in a completely unstructured environment. She sought, in part, short-term placement in a community living arrangement ("CLA"). The district court ordered that plaintiff be placed in a CLA. Defendants appealed arguing, in part, that the injunction violated the Eleventh Amendment. A majority of the Third Circuit panel disagreed stating: "Given the square holding in [*Milliken*] that a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of past constitutional violations, we hold that the .Commonwealth defendants' eleventh amendment argument is meritless." *Id.* at 84. Judge Becker, although concurring in the result, vigorously criticized the majority's analysis because, in his view, it "predicates relief on historical violations of Ms. Clark's constitutional rights" and was barred by the Eleventh Amendment. *Id.* at 87 (Becker, J., concurring). He stated:

[T]he majority asserts that [*Milliken*] stands for the proposition that a federal court may order states to fund programs to remedy historical violations of federal rights so long as the measures are necessary to undo those harmful effects of the historical violations that continue into the future. The majority thus reads [*Milliken*] as imposing ... a "continuing effects" exception on the traditional prospective-retrospective eleventh amendment dichotomy. The continuing effects exception works as follows: regardless of when the constitutional violation at issue occurs, the state is liable for any effects of the violation that are felt after the time of the institution of the suit.

*Id.* at 89–90 (citation omitted). Judge Becker stated that although a literal reading of *Milliken* may support the continuing effects exception, such an exception should be rejected. Not only would it "obliterate the prospective-retrospective distinction," *id.* at 90, but also, it is "completely at odds with the reasoning underlying the prospective-retrospective distinction, which is that it is a greater affront to the sovereignty of the states to force them to pay for prior illegal acts (the illegality of which the states were presumably unaware) than to enjoin them from doing certain acts in the future." *Id.*

Judge Becker's concerns give this court pause. However, by citing to *Clark* with approval in *Thomas S.,* the Fourth Circuit implicitly considered and rejected these concerns. Thus, the court must conclude that the Eleventh Amendment does not bar the injunctive relief sought in this case.

Defendants' proffer of *Booth v. Maryland,* 112 F.3d 139 (4th Cir.1997), does not allow the court to avoid this result. Although *Booth* contains language indicating that *Young* requires an ongoing violation of federal law, that case turned on the lack of a violation of federal law at all—past, present or potential. *Id.* at 142. Thus, the issue of whether injunctive relief could be ordered on a claim alleging continuing effects of a past violation was not before the court as it was in *Thomas S.* Significantly, however, this very issue was discussed in a decision of the Fourth Circuit rendered eleven years before *Thomas S.* In *Kimble v. Solomon,* 599 F.2d 599 (4th Cir.), *cert. denied,* 444 U.S. 950, 100

S.Ct. 422, 62 L.Ed.2d 320 (1979), the Fourth Circuit was faced with the question of whether certain injunctive relief was prohibited by the Eleventh Amendment. In the course of its discussion, the court stated:

> The defendant has devoted much attention in his brief to the question whether the relief sought by plaintiffs is addressed to a "continuing wrong" or merely to the continuing effects of a past wrong. We think that the answer is irrelevant. As the *Edelman* and *Milliken* cases show, the proper focus of eleventh amendment scrutiny is on the nature of the relief sought, not of the wrong committed.

*Id.* at 604 n. 6. *Thomas S.*'s Eleventh Amendment discussion does not make reference to *Kimble* and this court is at a loss as to how the Fourth Circuit's statement in *Kimble* can be reconciled with its approach in *Thomas S.* and that case's citation of *Clark.* In an effort to abide by the law as set forth by the Fourth Circuit, this court concludes that *Thomas S.*, being the most recent pronouncement on point, governs the case at hand.

In addition to raising the Eleventh Amendment argument in opposition to plaintiff's claims for injunctive relief, defendants also challenge the substance of plaintiff's due process and equal protection claims.

■ Plaintiff seeks injunctive relief on his equal protection claim arguing that "the facts submitted ... indicate [that he] suffers from the effects of *de jure* discrimination." (Pl.'s Mem. at 29.) Defendants argue that plaintiff has submitted no facts suggesting that he currently suffers from the effects of discrimination. In his memorandum in opposition to summary judgment, plaintiff argues:

> One of the continuing effects on [plaintiff] of the past discrimination is his decreased ability to function in a mainstream situation. Even though Cherry Hospital was made less restrictive after desegregation, [plaintiff] could not be placed in a less restrictive setting without compensatory, transitional programs designed to teach him how to take advantage of the new opportunities.

(*Id.* at 10–11.) In support of this assertion, plaintiff offers an excerpt from the deposition of Lulu Atkinson Jolliff. (Pl.'s Ex. 5 (Jolliff Dep.).) The excerpted portion of Jolliff's deposition contains a discussion of why plaintiff was screened out of a program called Community House. It is, however, devoid of any indication that plaintiff's current "decreased ability to function in a mainstream situation" resulted from past discrimination.

Plaintiff also argues: "[p]laintiff's evidence that [he] continues to suffer from the present effects of past racial discrimination is contained in his medical records, which document the lack of habilitative services after desegregation at Cherry Hospital, and detail his current condition." (Pl.'s Mem. at 3.) Plaintiff does not direct the court to any specific pages in his medical records. However, even if the medical records do "document [a] lack of habilitative services after desegregation ... and detail his current condition," plaintiff's proffer misses the mark. What plaintiff must show is that he currently suffers the effects of past discrimination.

Finally, plaintiff argues that the report of Doctors Brauer and Mackinson suggests that he is currently suffering the effects of past racial discrimination. Setting aside the questions of what the doctors' report actually says and whether it creates a genuine issue of material fact on the relevant issue, in their motion to strike and second motion *in limine,* defendants have objected to the court's consideration of the report. Since plaintiff's final expert report is still pending, the court declines to address the objections to the preliminary report or to review it in connection with this motion. However, because the final report may contain the requisite factual information, defendants' motion for summary judgment on plaintiff's equal protection claim is DENIED without prejudice.

■ Plaintiff argues that his procedural due process rights were violated when he was committed to Cherry Hospital and that he is currently suffering the effects of these violations. Assuming but not deciding that plaintiff's procedural due process rights were violated in the past, he has presented no evidence indicating that he is suffering any lingering effects of these violations. The court notes that although plaintiff was originally involuntarily committed to Cherry Hos-

pital, it is undisputed that since at least 1991, plaintiff has been voluntarily committed to the hospital. (Defs.' Ex. in Supp. of Mot. for Summ. J. ("Defs.' Ex.") 15.) The voluntary commitment papers were executed by plaintiff's guardian of the person, John Wasson. (*Id.*) Defendants' motion for summary judgment on plaintiff's claim for injunctive relief for violation of his right to procedural due process is GRANTED.

■ Finally, plaintiff seeks injunctive relief on his substantive due process claim. Plaintiff argues that because of the "long-standing inadequacy of [his] habilitation and the absence of rehabilitation after his stroke in 1986, defendants have violated the tenets of [*Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)]." (Pl.'s Mem. at 23.)

*Youngberg* held that mentally retarded persons who have been involuntarily committed to state institutions "enjoy[ ] constitutionally protected interests in conditions of reasonable care and safety, reasonably non-restrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324, 102 S.Ct. at 2462. "In determining whether the State has met its obligations in these respects, decisions made by the appropriate professional are entitled to a presumption of correctness." *Id.* "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462.

Plaintiff seems to argue that defendants are currently violating his substantive due process rights and alternatively, that they violated his substantive due process rights in the past and that he is currently suffering from the effects of that violation. In order to succeed on the latter claim, plaintiff must ultimately prove that he suffered a past violation and that he currently suffers from the effects of the violation. Defendants argue that plaintiff can establish neither of these elements.

As to the first element, plaintiff has created a genuine issue of material fact. (Pl.'s Ex. 18 (Selection of Medical Records).) Evaluation of the second element is more complicated. In support of his allegation that he is currently suffering from the effects of a past violation, plaintiff offers two items. First, is the report of Rose Verhoeven. (Pl.'s Ex. 22 (Verhoeven Rep.).) Assuming but not deciding that this report shows that plaintiff was suffering the effects of a prior violation at the time the report was prepared, the report was prepared in 1991. This lawsuit was filed in 1994. The report, therefore, even if appropriately considered, does not create a issue of fact regarding whether plaintiff is *currently* suffering from the effects of a past violation. This is particularly so given that plaintiff has acknowledged that during the 1990s, improvements in his care and quality of life had been made. (Pl.'s Mem. at 14. ("By 1995, improvements in [plaintiff's] care had been made, with corresponding improvements in the quality of his life as observed by his treatment team.").)

The second item submitted by plaintiff in support of his allegation that he currently suffers the effects of a past violation is the preliminary report of Doctors Brauer and Mackinson (Pl.'s Ex. 30.) For the reasons discussed above, the court declines to consider this report. Since plaintiff's final expert report may contain the requisite factual information, defendants' motion for summary judgment on plaintiff's substantive due process claim is DENIED without prejudice.

### D. *Motion to Strike/Second Motion In Limine*

Defendant has moved the court to exclude from consideration a number of exhibits submitted by plaintiff in connection with his summary judgment brief. Because the court has not found that any of these exhibits support plaintiff's case, defendants' motion to strike and second motion *in limine* are DENIED as moot.

### II. *Conclusion*

For the reasons discussed above,

(1) defendants' motion for summary judgment on plaintiff's § 1981 claim is GRANTED;

(2) defendants' motion for summary judgment on plaintiff's RA and ADA claims is DENIED;

(3) defendants' motion for summary judgment on plaintiff's claims for injunctive relief against the State of North Carolina is GRANTED;

(4) defendants' motion for summary judgment on plaintiff's claims against the individual state defendants for injunctive relief on his equal protection claim is DENIED without prejudice;

(5) defendants' motion for summary judgment on plaintiff's claims against the individual state defendants for injunctive relief on his procedural due process claims is GRANTED;

(6) defendants' motion for summary judgment on plaintiff's claim against the individual state defendants for injunctive relief on his substantive due process claim is DENIED without prejudice;

(7) defendants' motion to strike is DENIED as moot; and

(8) defendants' second motion *in limine* is DENIED as moot.