(Slip Opinion) OCTOBER TERM, 2011 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DOUGLAS, DIRECTOR, CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES *v.* INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–958.  Argued October 3, 2011—Decided February 22, 2012*

Medicaid is a cooperative federal-state program that provides medical care to needy individuals.  To qualify for federal funds, a State must submit its Medicaid plan and any amendments to the federal agency that administers the program, the Centers for Medicare & Medicaid Services (CMS).  Before approving a plan or amendments, CMS conducts a review to determine whether they comply with federal requirements.  Federal law requires state plans or amendments to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers" to make Medicaid "care and services" available.  42 U. S. C. §1396a(a)(30)(A).

After California enacted three statutes reducing the State's payments to various Medicaid providers, the State submitted plan

———————

*Together with No. 09–1158, *Douglas, Director, California Department of Health Care Services* v. *California Pharmacists Association et al., Douglas, Director, California Department of Health Care Services* v. *California Hospital Association et al.* (see this Court's Rule 12.4), *Douglas, Director, California Department of Health Care Services* v. *Independent Living Center of Southern California, Inc., et al.* (see this Court's Rule 12.4), *Douglas, Director, California Department of Health Care Services* v. *Dominguez, By and Through her Mother and Next Friend Brown, et al.* (see this Court's Rule 12.4); and No. 10–283, *Douglas, Director, California Department of Health Care Services* v. *Santa Rosa Memorial Hospital et al.,* also on certiorari to the same court.

2          DOUGLAS *v.* INDEPENDENT LIVING CENTER OF
SOUTHERN CAL., INC.

Syllabus

amendments to CMS. Before the agency finished its review, Medicaid providers and beneficiaries sought, in a series of cases, to enjoin the rate reductions on the ground that they were pre-empted by federal Medicaid law. In seven decisions, the Ninth Circuit ultimately affirmed or ordered preliminary injunctions preventing the State from implementing its statutes. The court (1) held that the providers and beneficiaries could bring a Supremacy Clause action; (2) essentially accepted their claim that the State did not show that its amended plan would provide sufficient services; (3) held that the amendments thus conflicted with §1396a(a)(30)(A); and (4) held that the federal statute pre-empted the new state laws. In the meantime, agency officials disapproved the amendments, and California sought further administrative review. The cases were in this posture when the Court granted certiorari to decide whether respondents could mount a Supremacy Clause challenge. After oral argument, CMS approved several of the State's amendments, and the State withdrew its requests for approval of the remainder.

*Held:* The judgments are vacated and the cases are remanded, thereby permitting the parties to argue before the Ninth Circuit in the first instance the question whether respondents may maintain Supremacy Clause actions now that CMS has approved the state statutes. Pp. 5–8.

(a) CMS' approval does not make these cases moot, but it does put them in a different posture, since the federal agency charged with administering Medicaid has now found that the rate reductions comply with federal law. That decision does not change the substantive question whether California's statutes are consistent with federal law, but it may change the answer. It may also require respondents to seek review of CMS' determination under the Administrative Procedure Act (APA) rather than in a Supremacy Clause action against California. The APA would likely permit respondents to obtain an authoritative judicial determination of the merits of their legal claim. And their basic challenge now presents the kind of legal question ordinarily calling for APA review. The Medicaid Act commits to a federal agency the power to administer a federal program, and the agency has exercised that authority. As CMS is comparatively expert in the statute's subject matter, its decision carries weight. And §1396a(a)(30)(A)'s broad and general language suggests that CMS' expertise is relevant in determining the provision's application. Finally, to allow a Supremacy Clause action to proceed once CMS has reached a decision threatens potential inconsistency or confusion. The Ninth Circuit declined to give weight to the Federal Government's interpretation of the federal law, but courts are ordinarily required to apply deference standards to agency decisionmaking. The

parties suggest no reasons why such standards should not be applied here or why, now that CMS has acted, a court should reach a different result in an APA action than in a Supremacy Clause action. That would make the Supremacy Clause challenge at best redundant. Permitting it to continue would seem inefficient, for the federal agency is not a participant in the action, which will decide whether agency-approved state rates violate federal law. Pp. 5–8.

(b) Given the present posture of the cases, the Court does not address whether the Ninth Circuit properly recognized a Supremacy Clause action to enforce the federal law before the agency took final action. To decide whether these cases may proceed under the Supremacy Clause now that the agency has acted, it will be necessary on remand to consider at least the matters addressed by this Court. P. 8.

No. 09–958, 572 F. 3d 644 (first judgment), 342 Fed. Appx. 306 (second judgment), No. 09–1158, 596 F. 3d 1098, 563 F. 3d 847, 374 Fed. Appx. 690, 596 F. 3d 1087, and No. 10–283, 380 Fed. Appx. 656, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, SOTOMAYOR, and KAGAN, JJ., joined. ROBERTS, C. J., filed a dissenting opinion, in which SCALIA, THOMAS, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 09–958, 09–1158, and 10–283

TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER

09–958                         *v.*

INDEPENDENT LIVING CENTER OF SOUTHERN
CALIFORNIA, INC., ET AL.

TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER

09–1158                        *v.*

CALIFORNIA PHARMACISTS ASSOCIATION ET AL.

TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER

10–283                         *v.*

SANTA ROSA MEMORIAL HOSPITAL ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[February 22, 2012]

JUSTICE BREYER delivered the opinion of the Court.

We granted certiorari in these cases to decide whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law—a federal law that, in their view, conflicts

2        DOUGLAS *v.* INDEPENDENT LIVING CENTER OF
SOUTHERN CAL., INC.

Opinion of the Court

with (and pre-empts) state Medicaid statutes that reduce payments to providers. Since we granted certiorari, however, the relevant circumstances have changed. The federal agency in charge of administering Medicaid, the Centers for Medicare & Medicaid Services (CMS), has now approved the state statutes as consistent with the federal law. In light of the changed circumstances, we believe that the question before us now is whether, once the agency has approved the state statutes, groups of Medicaid providers and beneficiaries may still maintain a Supremacy Clause action asserting that the state statutes are inconsistent with the federal Medicaid law. For the reasons set forth below, we vacate the Ninth Circuit's judgments and remand these cases for proceedings consistent with this opinion.

I

A

Medicaid is a cooperative federal-state program that provides medical care to needy individuals. To qualify for federal funds, States must submit to a federal agency (CMS, a division of the Department of Health and Human Services) a state Medicaid plan that details the nature and scope of the State's Medicaid program. It must also submit any amendments to the plan that it may make from time to time. And it must receive the agency's approval of the plan and any amendments. Before granting approval, the agency reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program. See 42 U. S. C. §§1316(a)(1), (b), 1396a(a), (b); 42 CFR §430.10 *et seq.* (2010); *Wilder* v. *Virginia Hospital Assn.*, 496 U. S. 498, 502 (1990). And the agency's director has specified that the agency will not provide federal funds for any state plan amendment until the agency approves the amendment. See Letter from Timothy M. Westmoreland,

Director, Center for Medicaid & State Operations, Health Care Financing Admin., U. S. Dept. of Health and Human Servs., to State Medicaid Director (Jan. 2, 2001), online at http://www.cms.gov/SMDL/downloads/SMD010201.pdf  (as visited Feb. 17, 2012, and available in Clerk of Court's case file).

The federal statutory provision relevant here says that a State's Medicaid plan and amendments must:

> "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and *to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.*"  42 U. S. C. §1396a(a)(30)(A) (emphasis added).

## B

In 2008 and 2009, the California Legislature passed three statutes changing that State's Medicaid plan.  The first statute, enacted in February 2008, reduced by 10% payments that the State makes to various Medicaid providers, such as physicians, pharmacies, and clinics.  See 2007–2008 Cal. Sess. Laws, 3d Extraordinary Sess. ch. 3, §§14, 15.  The second statute, enacted in September 2008, replaced the 10% rate reductions with a more modest set of cuts.  See 2008 Cal. Sess. Laws ch. 758, §§45, 57.  And the last statute, enacted in February 2009, placed a cap on the State's maximum contribution to wages and benefits paid by counties to providers of in-home supportive services.  See 2009–2010 Cal. Sess. Laws, 3d Extraordinary Sess. ch. 13, §9.

In September and December 2008, the State submitted

to the federal agency a series of plan amendments de-
signed to implement most of the reductions contained in
these bills.   Before the agency finished reviewing the
amendments, however, groups of Medicaid providers and
beneficiaries filed a series of lawsuits seeking to enjoin the
rate reductions on the ground that they conflicted with,
and therefore were pre-empted by, federal Medicaid law,
in particular the statutory provision that we have just
set forth.   They argued that California's Medicaid plan
amendments were inconsistent with the federal provision
because the State had failed to study whether the rate
reductions would be consistent with the statutory factors
of efficiency, economy, quality, and access to care.   In
effect, they argued that California had not shown that its
Medicaid plan, as amended, would "enlist enough provid-
ers" to make Medicaid "care and services" sufficiently
available.   42 U. S. C. §1396a(a)(30)(A).

The consolidated cases before us encompass five law-
suits brought by Medicaid providers and beneficiaries
against state officials.   Those cases produced seven deci-
sions of the Court of Appeals for the Ninth Circuit.   See
572 F. 3d 644 (2009); 342 Fed. Appx. 306 (2009); 596 F. 3d
1098 (2010); 563 F. 3d 847 (2009); 374 Fed. Appx. 690
(2010); 596 F. 3d 1087 (2010); and 380 Fed. Appx. 656
(2010).   The decisions ultimately affirmed or ordered
preliminary injunctions that prevented the State from im-
plementing its statutes.   They (1) held that the Medi-
caid providers and beneficiaries could directly bring an
action based on the Supremacy Clause; (2) essentially
accepted the claim that the State had not demonstrated
that its Medicaid plan, as amended, would provide suffi-
cient services; (3) held that the amendments consequently
conflicted with the statutory provision we have quoted;
and (4) held that, given the Constitution's Supremacy
Clause, the federal statute must prevail.   That is to say,
the federal statute pre-empted the State's new laws.

In the meantime, the federal agency was also reviewing the same state statutes to determine whether they satisfied the same federal statutory conditions. In November 2010, agency officials concluded that they did not satisfy those conditions, and the officials disapproved the amendments. California then exercised its right to further administrative review within the agency. The cases were in this posture when we granted certiorari to decide whether respondents could mount a Supremacy Clause challenge to the state statutes and obtain a court injunction preventing California from implementing its statutes.

About a month after we heard oral argument, the federal agency reversed course and approved several of California's statutory amendments to its plan. See Letter from Donald M. Berwick, Administrator, CMS, to Toby Douglas, Director, Cal. Dept. of Health Care Servs. (Oct. 27, 2011); Letter from Larry Reed, Director, Division of Pharmacy, Disabled and Elderly Health Programs Group, CMS, to Toby Douglas, Director, Cal. Dept. of Health Care Servs. (Oct. 27, 2011). In doing so, the agency also approved a limited retroactive implementation of some of the amendments' rate reductions. The State, in turn, withdrew its requests for approval of the remaining amendments, in effect agreeing (with one exception) that it would not seek to implement any unapproved reduction. See Letter from Michael E. Kilpatrick, Assistant Chief Counsel, Cal. Dept. of Health Care Servs., to Benjamin R. Cohen, Director, Office of Hearings, CMS (Oct. 27, 2011). (The exception consists of one statute for which California has submitted no amendment and which, by its own terms, cannot take effect unless and until this litigation is complete, see 2010 Cal. Sess. Laws ch. 725, §25.)

## II

All parties agree that the agency's approval of the enjoined rate reductions does not make these cases moot.

For one thing, the providers and beneficiaries continue to believe that the reductions violate the federal provision, the agency's view to the contrary notwithstanding. For another, federal-court injunctions remain in place, forbidding California to implement the agency-approved rate reductions. And, in light of the agency's action, California may well ask the lower courts to set those injunctions aside.

While the cases are not moot, they are now in a different posture. The federal agency charged with administering the Medicaid program has determined that the challenged rate reductions comply with federal law. That agency decision does not change the underlying substantive question, namely whether California's statutes are consistent with a specific federal statutory provision (requiring that reimbursement rates be "sufficient to enlist enough providers"). But it may change the answer. And it may require respondents now to proceed by seeking review of the agency determination under the Administrative Procedure Act (APA), 5 U. S. C. §701 *et seq.*, rather than in an action against California under the Supremacy Clause.

For one thing, the APA would likely permit respondents to obtain an authoritative judicial determination of the merits of their legal claim. The Act provides for judicial review of final agency action. §704. It permits any person adversely affected or aggrieved by agency action to obtain judicial review of the lawfulness of that action. §702. And it requires a reviewing court to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." §706(2)(A).

For another thing, respondents' basic challenge now presents the kind of legal question that ordinarily calls for APA review. The Medicaid Act commits to the federal agency the power to administer a federal program. And here the agency has acted under this grant of authority. That decision carries weight. After all, the agency is

comparatively expert in the statute's subject matter. And the language of the particular provision at issue here is broad and general, suggesting that the agency's expertise is relevant in determining its application.

Finally, to allow a Supremacy Clause action to proceed once the agency has reached a decision threatens potential inconsistency or confusion. In these cases, for example, the Ninth Circuit, in sustaining respondents' challenges, declined to give weight to the Federal Government's interpretation of the federal statutory language. (That view was expressed in an *amicus curiae* brief that the United States submitted in prior litigation.) See *Independent Living Center of Southern Cal., Inc.* v. *Maxwell-Jolly*, 572 F. 3d 644, 654 (CA9 2009) (referring to the United States' certiorari-stage invitation brief in *Belshe* v. *Orthopaedic Hospital*, 522 U. S. 1044 (1998) (denying writ of certiorari)). And the District Court decisions that underlie injunctions that now forbid California to implement its laws may rest upon similar analysis.

But ordinarily review of agency action requires courts to apply certain standards of deference to agency decisionmaking. See *National Cable & Telecommunications Assn.* v. *Brand X Internet Services*, 545 U. S. 967 (2005) (describing deference reviewing courts must show); *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984) (same). And the parties have not suggested reasons why courts should not now (in the changed posture of these cases) apply those ordinary standards of deference.

Nor have the parties suggested reasons why, once the agency has taken final action, a court should reach a different result in a case like this one, depending upon whether the case proceeds in a Supremacy Clause action rather than under the APA for review of an agency decision. Indeed, to permit a difference in result here would subject the States to conflicting interpretations of federal

law by several different courts (and the agency), thereby threatening to defeat the uniformity that Congress intended by centralizing administration of the federal program in the agency and to make superfluous or to undermine traditional APA review. Cf. *Astra USA, Inc.* v. *Santa Clara County*, 563 U. S. ___, ___ (2011) (slip op., at 2) (noting that the treatment of lawsuits that are "in substance one and the same" "must be the same, '[n]o matter the clothing in which [plaintiffs] dress their claims'" (quoting *Tenet* v. *Doe*, 544 U. S. 1, 8 (2005)). If the two kinds of actions should reach the same result, the Supremacy Clause challenge is at best redundant. And to permit the continuation of the action in that form would seem to be inefficient, for the agency is not a participant in the pending litigation below, litigation that will decide whether the agency-approved state rates violate the federal statute.

### III

In the present posture of these cases, we do not address whether the Ninth Circuit properly recognized a Supremacy Clause action to enforce this federal statute before the agency took final action. To decide whether these cases may proceed directly under the Supremacy Clause now that the agency has acted, it will be necessary to take account, in light of the proceedings that have already taken place, of at least the matters we have set forth above. It must be recognized, furthermore, that the parties have not fully argued this question. Thus, it may be that not all of the considerations that may bear upon the proper resolution of the issue have been presented in the briefs to this Court or in the arguments addressed to and considered by the Court of Appeals. Given the complexity of these cases, rather than ordering reargument, we vacate the Ninth Circuit's judgments and remand the cases, thereby permitting the parties to argue the matter before that Circuit in the first instance.

*It is so ordered.*

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

Nos. 09–958, 09–1158, and 10–283

———

TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER
09–958                    *v.*
INDEPENDENT LIVING CENTER OF SOUTHERN
CALIFORNIA, INC., ET AL.


TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER
09–1158                    *v.*
CALIFORNIA PHARMACISTS ASSOCIATION ET AL.


TOBY DOUGLAS, DIRECTOR, CALIFORNIA DE-
PARTMENT OF HEALTH CARE SERVICES,
PETITIONER
10–283                    *v.*
SANTA ROSA MEMORIAL HOSPITAL ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[February 22, 2012]

CHIEF JUSTICE ROBERTS, with whom JUSTICE SCALIA, JUSTICE THOMAS, and JUSTICE ALITO join, dissenting.

The Medicaid Act established a collaborative federal-state program to assist the poor, elderly, and disabled in obtaining medical care. The Act is Spending Clause legis-

lation; in exchange for federal funds a State agrees to abide by specified rules in implementing the program. One of those rules is set forth in §30(A) of the Act, which requires States to meet particular criteria in establishing Medicaid reimbursement rates for those providing services under the Act. 42 U. S. C. §1396a(a)(30)(A). In 2008 and 2009, California enacted legislation reducing the rates at which it would compensate some providers. Certain providers and individuals receiving Medicaid benefits thought the new reimbursement rates did not comply with the criteria set forth in §30(A). They sued the State to prevent the new rates from going into effect.

But those plaintiffs faced a significant problem: Nothing in the Medicaid Act allows providers or beneficiaries (or anyone else, for that matter) to sue to enforce §30(A). The Act instead vests responsibility for enforcement with a federal agency, the Centers for Medicare & Medicaid Services (CMS). See, *e.g.,* 42 U. S. C. §1316(a)(1). That is settled law in the Ninth Circuit. See *Sanchez* v. *Johnson*, 416 F. 3d 1051, 1058–1062 (2005) ("[T]he flexible, administrative standards embodied in [§30(A)] do not reflect a Congressional intent to provide a private remedy for their violation"). And it is the law in virtually every other circuit as well. See, *e.g.*, *Long Term Care Pharmacy Alliance* v. *Ferguson*, 362 F. 3d 50, 57–59 (CA1 2004) (holding that it would be inconsistent with this Court's precedent to find that §30(A) creates rights enforceable by private parties). The respondents have never argued the contrary. Thus, as this case comes to us, the federal rule is that Medicaid reimbursement rates must meet certain criteria, but private parties have no statutory right to sue to enforce those requirements in court.

The providers and beneficiaries sought to overcome that difficulty by arguing that they could proceed against the State directly under the Supremacy Clause of the Constitution, even if they could not do so under the Act. They

contended that the new state reimbursement rates were inconsistent with the requirements of §30(A). The Supremacy Clause provides that a federal statute such as §30(A) preempts contrary state law. Therefore, the providers and beneficiaries claimed, they could sue to enforce the Supremacy Clause, which requires striking down the state law and giving effect to §30(A). The Ninth Circuit agreed with this argument and blocked the new state reimbursement rates.

During briefing and argument in this case, the parties have debated broad questions, such as whether and when constitutional provisions as a general matter are directly enforceable. It is not necessary to consider these larger issues. It is not even necessary to decide whether the Supremacy Clause can ever provide a private cause of action. The question presented in the certiorari petitions is narrow: "Whether Medicaid recipients and providers may maintain a cause of action under the Supremacy Clause to enforce [§30(A)] by asserting that the provision preempts a state law reducing reimbursement rates." To decide this case, it is enough to conclude that the Supremacy Clause does not provide a cause of action to enforce the requirements of §30(A) when Congress, in establishing those requirements, elected not to provide such a cause of action in the statute itself.

The Supremacy Clause operates differently than other constitutional provisions. For example, if Congress says in a law that certain provisions do not give rise to a taking without just compensation, that obviously does not resolve a claim under the Takings Clause that they do. The Supremacy Clause, on the other hand, is "not a source of any federal rights." *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, 613 (1979); accord, *Dennis* v. *Higgins*, 498 U. S. 439, 450 (1991) (contrasting, in this regard, the Supremacy Clause and the Commerce Clause). The purpose of the Supremacy Clause is instead to ensure

that, in a conflict with state law, whatever Congress says goes.  See The Federalist, No. 33, p. 205 (C. Rossiter ed. 1961) (A. Hamilton) (the Supremacy Clause "only declares a truth which flows immediately and necessarily from the institution of a federal government").

Thus, if Congress does not intend for a statute to supply a cause of action for its enforcement, it makes no sense to claim that the Supremacy Clause itself must provide one. Saying that there is a private right of action under the Supremacy Clause would substantively change the federal rule established by Congress in the Medicaid Act.  That is not a proper role for the Supremacy Clause, which simply ensures that the rule established by Congress controls.

Indeed, to say that there is a federal statutory right enforceable under the Supremacy Clause, when there is no such right under the pertinent statute itself, would effect a complete end-run around this Court's implied right of action and 42 U. S. C. §1983 jurisprudence.  We have emphasized that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under §1983 or under an implied right of action." *Gonzaga Univ.* v. *Doe*, 536 U. S. 273, 286 (2002).  This body of law would serve no purpose if a plaintiff could overcome the absence of a statutory right of action simply by invoking a right of action under the Supremacy Clause to the exact same effect.  Cf. *Astra USA, Inc.* v. *Santa Clara County*, 563 U. S. ___, ___ (2011) (slip op., at 7) (rejecting contention that contract incorporating statutory terms could be enforced in private action when statute itself could not be; "[t]he absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless if [contracting] entities could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead").

The providers and beneficiaries argue, however, that the

traditional exercise of equity jurisdiction supports finding a direct cause of action in the Supremacy Clause. This contention fails for the same reason. It is a longstanding maxim that "[e]quity follows the law." 1 J. Pomeroy, Treatise on Equity Jurisprudence §425 (3d ed. 1905). A court of equity may not "create a remedy in violation of law, or even without the authority of law." *Rees* v. *Watertown*, 19 Wall. 107, 122 (1874). Here the law established by Congress is that there is no remedy available to private parties to enforce the federal rules against the State. For a court to reach a contrary conclusion under its general equitable powers would raise the most serious concerns regarding both the separation of powers (Congress, not the Judiciary, decides whether there is a private right of action to enforce a federal statute) and federalism (the States under the Spending Clause agree only to conditions clearly specified by Congress, not any implied on an ad hoc basis by the courts).

This is not to say that federal courts lack equitable powers to enforce the supremacy of federal law when such action gives effect to the federal rule, rather than contravening it. The providers and beneficiaries rely heavily on cases of this kind, most prominently *Ex parte Young*, 209 U. S. 123 (1908). Those cases, however, present quite different questions involving "the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law." *Virginia Office for Protection and Advocacy* v. *Stewart*, 563 U. S. ___, ___ (2011) (KENNEDY, J., concurring) (slip op., at 1). Nothing of that sort is at issue here; the respondents are not subject to or threatened with any enforcement proceeding like the one in *Ex parte Young*. They simply seek a private cause of action Congress chose not to provide.

\* \* \*

The Court decides not to decide the question on which
we granted certiorari but instead to send the cases back to
the Court of Appeals, because of the recent action by CMS
approving California's new reimbursement rates. But the
CMS approvals have no impact on the question before this
Court. If, as I believe, there is no private right of action
under the Supremacy Clause to enforce §30(A), that is the
end of the matter. If, on the other hand, the Court be-
lieves that there is such a cause of action, but that CMS's
recent rate approvals may have an effect on that action
going forward, then the Court should say just that and
*then* remand to the Ninth Circuit for consideration of the
effect of the agency approvals.

I am not sure what a remand without answering the
preliminary question is meant to accomplish. The major-
ity claims that the agency's recent action "may change the
[lower courts'] answer" to the question whether the partic-
ular state rates violate §30(A). *Ante,* at 6. But that fact-
specific question is not the one before us; we chose not to
grant certiorari on the question whether California's rates
complied with §30(A), limiting our grant to the cause of
action question. 562 U. S. \_\_\_ (2011).

The majority also asserts that the lower courts must
"decide whether these cases may proceed directly under
the Supremacy Clause now that the agency has acted."
*Ante,* at 8. The majority contends that the parties have
not "fully argued this question." *Ibid.* But the agency
proceedings that ultimately led to the CMS approvals
were well underway when this Court granted certiorari.
The parties debated the import of the parallel adminis-
trative proceedings in their initial briefs and at oral ar-
gument. See, *e.g.,* Brief for Petitioner 28–29 ("Private
lawsuits . . . interfere with . . . CMS's own enforcement
procedures," as is "vividly demonstrated in the present
cases"); Brief for Respondents Santa Rosa Memorial Hos-

pital et al. in No.10–283, p. 46 ("This case vividly illustrates why the [administrative] enforcement scheme . . . cannot substitute for a constitutional preemption claim"). No party—nor the United States as *amicus curiae*—argued that any action by CMS would affect the answer to the question we granted certiorari to review. See, *e.g.,* Tr. of Oral Arg. 53–54 (counsel for respondents) (arguing that, "to be sure," there would be a cause of action under the Supremacy Clause even after the agency took action on the challenged rates).

Once the CMS approvals were issued, this Court directed the parties to file supplemental briefs to address "the effect, if any, of the [CMS approvals] on the proper disposition of this case." 565 U. S. ___ (2011). Again, no one argued on supplemental briefing that the CMS approvals affected the answer to the question before this Court. See, *e.g.*, Supp. Letter Brief for Certain Respondents 6 ("The CMS findings do not directly resolve whether the Constitution supports a right of action"); Supp. Letter Brief for Petitioner 6 (agreeing that "*if* a preemption cause of action may be stated here against the State, [CMS] approval may affect its merits but not its existence"). It seems odd, then, to claim that the parties have not had the opportunity to fully address the impact of the agency action on the question that we granted certiorari to review: whether the Ninth Circuit correctly recognized a private cause of action under the Supremacy Clause to enforce §30(A).

So what is the Court of Appeals to do on remand? It could change its view and decide that there is no cause of action directly under the Supremacy Clause to enforce §30(A). The majority itself provides a compelling list of reasons for such a result: "The Medicaid Act commits to the federal agency the power to administer a federal program"; "the agency is comparatively expert in the statute's subject matter"; "the language of the particular provision

at issue here is broad and general, suggesting that the agency's expertise is relevant"; and APA review would provide "an authoritative judicial determination." *Ante*, at 6–7. Allowing for both Supremacy Clause actions and agency enforcement "threatens potential inconsistency or confusion," and imperils "the uniformity that Congress intended by centralizing administration of the federal program in the agency." *Ante,* at 7–8; see *Gonzaga*, 536 U. S., at 291–293 (BREYER, J., concurring in judgment) (explaining that Congress often means to preclude a private right of action in statutes where it employs an administrative enforcement scheme that achieves "expertise, uniformity, widespread consultation, and resulting administrative guidance," while "avoid[ing] the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action for damages").

The majority acknowledges, in light of all this, that the Supremacy Clause challenge appears "at best redundant," and that "continuation of the action in that form would seem to be inefficient." *Ante*, at 8. Still, according to the majority, the Court of Appeals on remand could determine that the Supremacy Clause action may be brought but then must abate "now that the agency has acted," *ibid.*— as everyone knew the agency would. A Court concerned with "inefficien[cy]" should not find that result very palatable, and the majority cites no precedent for a cause of action that fades away once a federal agency has acted. Such a scenario would also create a bizarre rush to the courthouse, as litigants seek to file and have their Supremacy Clause causes of action decided before the agency has time to arrive at final agency action reviewable in court.

Or perhaps the suits should continue in a different "form," by which I understand the Court to suggest that they should morph into APA actions. The APA judicial

review provisions, however, seem to stand in the way of such a transformation. To convert the litigation into an APA suit, the current defendant (the State) would need to be dismissed and the agency (which is not currently a party at all) would have to be sued in its stead. 5 U. S. C. §§701–706. Given that APA actions also feature—among other things—different standards of review, different records, and different potential remedies, it is difficult to see what would be left of the original Supremacy Clause suit. Or, again, why one should have been permitted in the first place, when agency review was provided by statute, and the parties were able to and did participate fully in that process.

I would dispel all these difficulties by simply holding what the logic of the majority's own opinion suggests: When Congress did not intend to provide a private right of action to enforce a statute enacted under the Spending Clause, the Supremacy Clause does not supply one of its own force. The Ninth Circuit's decisions to the contrary should be reversed.