MEMORANDUM **
North East Medical Services appeals the district court’s decision denying it injunc-tive and declaratory relief. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court incorrectly determined that the Eleventh Amendment barred North East’s requested relief. We nevertheless affirm on a different ground, as explained below. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994) (“If the result reached by the district court is correct, we will affirm even if the district court relied on an erroneous ground.”).
The district court erred by applying the “date of service” test to hold that North East was seeking retrospective monetary relief. Under the date of service test, “whether relief is prospective or retrospective in the Medicaid payment context turns on the date of service, not on the date of payment.” Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 661 n.19 (9th Cir. 2009) vacated sub. nom. Douglas v. Indep. Living Ctr. of S. Cal., Inc., 565 U.S. 606, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012). We used this test in Independent Living Center, 572 F.3d at 660-61, because granting an injunction would have had the practical effect of forcing the state to pay the health center additional money for services that the center had provided in the past. Other circuits have applied this test when an injunction would require a court to order a state to pay additional money for medical services already rendered. See N.Y.C. Health & Hosps. Corp. v. Perales, 50 F.3d 129, 137 (2d Cir. 1995); Wisc. Hosp. Ass’n v. Reivitz, 820 F.2d 863, 867 (7th Cir. 1987); Kimble v. Solomon, 599 F.2d 599, 604-05 (4th Cir. 1979).
*616 The date of service test does not apply here because North East is not asking for additional reimbursement from California for medical services that it provided in 2008. Rather, it alleges an ongoing violation of federal law, and seeks to enjoin the director of California’s health care services from requiring it to disclose its Part D money when settling up for the 2008 fiscal year. Disclosure would enable the state to take money from North East, not (as in Independent Living) North East to take money from the state. If North East thought that it could get more money from California during the annual reconciliation process, it would have no reason not to disclose its Part D funding rather than start this multi-year litigation.
We, however, affirm the district court’s order denying equitable relief under the unclean hands doctrine. “The unclean hands doctrine derives from the equitable maxim that ‘he who comes into equity must come with clean hands’ ” and requires that plaintiffs seeking equitable relief “act[] fairly and without fraud or deceit as to the controversy in issue.” Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985). Here, North East has acted unfairly to try to reap a windfall. From 2006 through 2008, North East used Option 2, before permanently switching over to Option 1. If North East had started billing under Option 1 as soon as it thought that California was improperly seizing its Part D money rather than waiting three years, it would not have needed to initiate this action. North East now wants to avoid disclosing how much Part D money it got in 2008 in order to retain its Part D money along with the state Medicaid money that it has already received. The unfairness of the nondisclosure, and the apparent absence of any reason for it that would not involve keeping double payments for providing pharmacy services to dual eligi-bles, bars equitable and declaratory relief.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.